**June W. DEMONTBREUN,
Plaintiff/Appellee,**

v.

**CNA INSURANCE COMPANIES,
Defendant/Appellant.**

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Aug. 9, 1991.

Permission to Appeal Denied by
Supreme Court Dec. 30, 1991.

Frank J. Scanlon, Watkins, McGugin, McNeilly & Rowan, Nashville, for defendant/appellant.

Joseph M. Dalton, Jr., Bednarz, Dalton & Eason, Nashville, for plaintiff/appellee.

## OPINION

KOCH, Judge.

This appeal involves a worker's efforts to obtain long-term disability benefits from a former employer's group insurance carrier. When the insurer denied her claim, the worker filed an action in the Circuit Court for Sumner County seeking both disability benefits and the statutory bad faith penalty. After a jury returned a special verdict finding that the worker was totally disabled, the trial court entered an order directing the insurer to pay the worker disability benefits. The insurer has appealed, asserting that the trial court's decision is inconsistent with the jury's verdict and is not supported by the evidence. We agree and, therefore, reverse the judgment.

### I.

June Demontbreun went to work for Ingram and Associates ("Ingram") in July, 1982 doing telephone collection work. On March 18, 1985, she injured her back at work trying to move a plastic tub of files. She told her supervisor about the incident but continued to work without consulting a physician. She explained later that she was in severe pain but that she did not stop working because she could not afford to lose her commissions.

Eleven days later, Ms. Demontbreun quit her job following a dispute with another worker over Ingram's smoking policy. Her resignation letter stated:

> [P]lease accept my resignation effective today. I believe it to be in the best interest of everyone. I cannot help the fact that cigarette smoke makes me ill. This has caused problems and I am going to search for a position where the smok-

ing will not present problems. I want to thank you for the opportunity of working for you and will deeply appreciate a letter of recommendation.

Although she later attempted to revoke her resignation in order to obtain extended medical leave, Ms. Demontbreun did not return to work at Ingram after March 29, 1985.

Ms. Demontbreun did not seek medical attention for her back until May, 1985. She was treated by several physicians and in June, 1985 underwent surgery to remove a ruptured disc. Following the surgery and rehabilitation, Ms. Demontbreun's treating physician determined that she had a twelve percent permanent partial impairment to the body as a whole for which she received $9,970 in worker's compensation benefits.

In July, 1986, Ms. Demontbreun filed a claim for benefits under Ingram's group disability policy issued by the CNA Insurance Companies ("CNA"). CNA denied the claim on the ground that Ms. Demontbreun was not eligible to receive benefits and because she had not filed a timely claim.

Ms. Demontbreun filed suit against CNA seeking disability benefits and the statutory bad faith penalty. In addition to denying that Ms. Demontbreun was entitled to benefits, CNA asserted that the Employee Retirement Income Security Act ("ERISA") preempted her claim for statutory penalties. Prior to trial, the parties stipulated that ERISA governed the case and, therefore, did not join issue on the claim for the statutory penalty.

The jury returned a special verdict finding that Ms. Demontbreun was totally disabled, that her disability began in June, 1985, and that she had given timely notice of her claim. Both parties insisted that these findings supported their positions, but the trial court finally entered a judgment in favor of Ms. Demontbreun ordering CNA to pay her disability benefits according to Ingram's group disability policy.

## II.

The primary thrust of CNA's appeal is that Ms. Demontbreun was not entitled to group disability benefits because she was not disabled while employed at Ingram. It asserts that the trial court's imposition of liability was contrary to the jury's express finding that she did not become disabled until "June of 1985." This argument has merit.

## A.

The terms of the group disability policy CNA sold to Ingram control Ms. Demontbreun's right to receive disability benefits. Therefore, we must look first to the insurance policy to determine the scope of CNA's liability.

The ordinary rules of contract construction apply to insurance policies. *Draper v. Great Am. Ins. Co.,* 224 Tenn. 552, 560, 458 S.W.2d 428, 432 (1970). Accordingly, insurance policies should be read as a whole, *English v. Virginia Sur. Co.,* 196 Tenn. 426, 430, 268 S.W.2d 338, 340 (1954), for the purpose of ascertaining and giving effect to the parties' intentions. *Blue–Diamond Coal Co. v. Holland–America Ins. Co.,* 671 S.W.2d 829, 833 (Tenn.1984).

Policy language should be construed in the light of reason and should be given its plain, ordinary meaning. *Moss v. Golden Rule Life Ins. Co.,* 724 S.W.2d 367, 368 (Tenn.Ct.App.1986); *Ballard v. Great North Am. Life & Casualty Co.,* 667 S.W.2d 79, 82 (Tenn.Ct.App.1983). It should not be given a forced construction that renders the policy ineffective or extends its coverage beyond its intended scope. *Dixon v. Gunter,* 636 S.W.2d 437, 441 (Tenn.Ct.App.1982).

## B.

CNA's group policy provides that it will insure "certain eligible employees" and then states that "[t]he employees eligible to be insured under this policy are described in Statement 2 of the Application." Statement 2 of Ingram's application defines the eligible employees as "[a]ll active, full-time Employees, ages 18 through 69" and further defines an "active, full-time" employee as "a permanent employee who

works at least 30 hours per week. Part-time, temporary or seasonal employees are not eligible."

In addition, the policy defines an "insured employee" as "an employee whose insurance is in force under the terms of this policy" and also clearly describes when an employee will no longer be considered an insured employee. The policy states:

The Insured Employee's coverage will terminate on the earliest of the following dates:

(1) the date this policy is terminated;

(2) the premium due date if the Employer fails to pay the required premium for the Insured Employee except for an inadvertent error; or

(3) the date the Insured Employee

(a) is no longer a member of a class eligible for this insurance,

(b) withdraws from the program,

(c) is retired or pensioned, or

(d) ceases work because of a leave of absence, furlough, layoff or temporary work stoppage due to a labor dispute, unless We and the Employer have agreed in writing to continue insurance during such period.

Termination will not affect a covered loss which began before the date of termination.

The loss covered by CNA's policy is an insured employee's loss of income during periods of either total disability, partial disability, or rehabilitative employment. Under the policy, the criteria for being considered totally disabled differs depending on the length of the disability. For the first thirty-six months of disability, a totally disabled employee is one who is

(1) continuously unable to perform the substantial and material duties of his regular occupation;

(2) under the regular care of a licensed physician, other than himself; and

(3) not gainfully employed in any occupation for which he is or becomes qualified by education, training or experience.

After thirty-six months, a totally disabled employee is one who is

(1) continuously unable to engage in any occupation for which he is or becomes qualified by education, training or experience; and

(2) under the regular care of a licensed physician other than himself.

When viewed in their entirety, the terms of CNA's policy are clear. It provides coverage only to persons who are active, full-time employees of Ingram who become partially or totally disabled while they are insured. While the policy covers eligible employees who are injured on the job notwithstanding their later termination, it does not cover persons who become partially or totally disabled after they cease to be an "active, full time employee" of Ingram. The onset of the disability is the controlling factor, not the date of the injury.

 Ms. Demontbreun injured her back on March 18, 1985 while she was an active, full-time employee of Ingram. However, there is no evidence in the record that she became totally or partially disabled until after she resigned from her job on March 29, 1985. The jury determined that Ms. Demontbreun did not become disabled until June, 1985. At that time she was no longer "a member of a class eligible for this insurance."

The trial court was not at liberty to disregard the jury's specific finding that Ms. Demontbreun did not become disabled until after she had left Ingram's employment. It is undisputed that Ms. Demontbreun was working regularly and performing her duties up to and including the final day of her employment with Ingram. Accordingly, the evidence does not support the trial court's conclusion that Ms. Demontbreun was entitled to disability benefits under CNA's group insurance policy.

We reached a similar result in a case involving an employee who retired before she became disabled. In construing a disability policy similar to the one involved in this case, we noted:

It is obvious that the plan was designed to provide a disability benefit to an employee who became disabled during his or her active working career and while he or she was not covered by any

other disability benefit. It may be that Mrs. Warren was induced to retire by some fraudulent misrepresentation of her superior or co-worker, but there is nothing in the record to connect those representations to any agent of Connecticut General.

*Warren v. Connecticut Gen. Life Ins. Co.,* No. 01–A–01–9005–CV–00166, 1990 WL 156289 (Tenn.Ct.App. Oct. 19, 1990)[1]. Our conclusion is in accord with decisions of other courts holding that similar coverage does not extend beyond the termination of employment. *See Connecticut Gen. Life Ins. Co. v. Blackmer,* 121 Ga.App. 137, 173 S.E.2d 117, 118–19 (1970); *Owens v. Bird & Son, Inc.,* 323 So.2d 883, 885 (La.Ct.App. 1975); *Anthony v. Metropolitan Life Ins. Co.,* 54 A.D.2d 866, 388 N.Y.S.2d 597, 598 (1976).

### III.

We reverse the judgment and remand the case to the trial court with directions to enter an order dismissing Ms. Demontbreun's complaint against CNA with prejudice. Since Ms. Demontbreun is not entitled to the statutory bad faith penalty, we pretermit consideration of her issue concerning ERISA's application to cases of this sort. We also tax the costs of this appeal to June W. Demontbreun for which execution, if necessary, may issue.

TODD, P.J., and LEWIS, J., concur.

---

1. No Tenn.R.App.P. 11 application for permission to appeal was filed in this case, and the author has not circulated the opinion for publication pursuant to Tenn.Ct.App.R. 11.