Stephen W. BLACK and wife Barbara Black, Plaintiffs/Appellees,

v.

AETNA INSURANCE COMPANY a/k/a Aetna Casualty Insurance Company of Hartford, Connecticut, Defendant/Appellant.

Court of Appeals of Tennessee, Middle Section, at Nashville.

June 30, 1995.

Application for Permission to Appeal Denied by Supreme Court Oct. 23, 1995.

Arthur E. McClellan, McClellan, Powers, Ehmling & Dix, Gallatin, for Defendant/Appellant.

Wm. Kennerly Burger, Murfreesboro, for Plaintiffs/Appellees.

## OPINION

KOCH, Judge.

This appeal involves the insurance coverage for an automobile that was destroyed by fire. The owners of the automobile filed a declaratory judgment action in the Circuit Court for Rutherford County after their insurance company denied coverage on the ground that the policy had been canceled for nonpayment of premiums shortly before the fire. The trial court heard the case without a jury and awarded the owners $9,125. The insurance company asserts on this appeal that the trial court should have determined, either in response to its motion for summary judgment or following the hearing, that its policy had been canceled before the date of the fire that destroyed the automobile. We have determined that the insurance company had effectively canceled the policy prior to the loss and, therefore, reverse the trial court.

### I.

Stephen and Barbara Black reside in Murfreesboro. They obtain their personal insurance through the Webb Pickard Insurance Company in Lavergne. Janice Templeton, Webb Pickard's office manager, has assisted the Blacks since 1982 in obtaining insurance for their home, their boat, and their automobiles from The Ætna Casualty and Surety Company ("Ætna") and other related carriers. Ms. Templeton considers the Blacks to be personal friends and preferred customers.

The Blacks' personal auto policy covered their 1987 Pontiac GrandAm and their 1989 Pontiac GrandPrix. They paid their premiums semiannually, and in late January 1991 received a routine renewal notice from Ætna stating that the renewal premium for the six-month period between March 9 and September 9, 1991, would be $551. The notice also stated that the Blacks could keep their insurance in force by making a minimum payment of $221.

Before the deadline for the minimum payment, Ms. Black telephoned Ms. Templeton to find out whether they could reduce their premium by increasing the deductible on their collision coverage. Ms. Templeton informed Ms. Black that increasing their deductible would reduce their semiannual premium by $60. Accordingly, Ms. Black requested Ms. Templeton to modify their coverage and also sought her advice about paying the premium on their existing policy. Ms. Templeton advised Ms. Black to pay the minimum amount due on the existing policy and informed her that Ætna would send her a statement for the remaining premium on the revised policy. On March 1, 1991, Mr. Black sent Ætna a $224 check (the $221 minimum payment plus a $3.00 installment fee).

Ætna sent the Blacks a new declarations page for their policy on March 9, 1991. The Blacks, who had been experiencing problems with the delivery of their mail, did not receive the new declarations page or, more importantly, the accompanying notice that they still owed $276 for their semiannual premium. The notice stated that the Blacks could pay the remaining premium in full or that they could keep the policy in force by paying $53 on or before April 9, 1991.

The Blacks made no further premium payments because they had not received the March 9 notice. On April 23, 1991, Ætna mailed them a notice of cancellation stating that their new policy would be canceled on May 29, 1991, if they did not pay at least $177 by May 9, 1991. The Blacks insist that they never received Ætna's April 23 notice. Ætna canceled the Blacks' policy on May 29, 1991.

The Blacks' 1987 Pontiac GrandAm was totally destroyed in a garage fire at their home on June 2, 1991. They telephoned Ms. Templeton on June 3, 1991, to report the loss. Later the same day, Ms. Templeton received a notice from Ætna that the Blacks' policy had been canceled on May 29, 1991, due to nonpayment of premiums. Ms. Templeton informed Mr. Black of the situation on June 4, 1991. The Blacks were surprised and upset.

While Ætna did not hesitate to cover the damage to the Blacks' house under their homeowner's policy, it informed the Blacks

on June 14, 1991, that it reserved its rights to deny coverage for the loss of their automobile. On August 14, 1991, Ætna informed the Blacks that it had denied their claim because their automobile policy had been canceled before the loss occurred. The Blacks filed suit on October 29, 1991 in the Circuit Court for Rutherford County seeking a declaratory judgment that their Ætna policy was in effect at the time of the loss. The trial court heard the proof in July 1993 and filed its opinion in August 1993. The trial court concluded that

> [t]he insurer has the responsibility to inform direct bill policyholders of the changes including but not limited to, the changes in their premium. In this cause the insurer failed to notify the Blacks except by a "Notice of Cancellation", which was not received, and was mailed April 20, 1991, or forty-two (42) days at least after the company put into effect the policy of insurance for the Blacks. A policyholder after being instructed by an agent of the company to await a notice from the company is entitled to quicker notice. Failure to do so by Aetna makes the carrier liable for the loss.
>
> Obviously, the carrier received the partial payment on or before March 9, 1991. Notice of the balance due should have been promptly sent to the Blacks. The record contains no evidence of such a notice until the notice of cancellation allegedly mailed by Aetna Life and Casualty on April 20, 1991, as shown by Exhibit No. 3 attached to the "Affidavit of David Uhlman." (No explanation was given the Court for the dates written in ink on page 24 of the "Certificate of mailing.")

Ætna perfected this appeal on the ground that mailing of the notice of cancellation alone should have been sufficient to cancel the Blacks' policy.

## II.

■ The parties' respective rights and obligations are governed by their contract of insurance whose terms are embodied in the policy. As with any other contract, our responsibility is to give effect to the expressed intention of the parties, *Blaylock & Brown Constr., Inc. v. AIU Ins. Co.,* 796 S.W.2d 146, 149 (Tenn.Ct.App.1990), by construing the policy fairly and reasonably, *Demontbreun v. CNA Ins. Cos.,* 822 S.W.2d 619, 621 (Tenn.Ct.App.1991); *Dixon v. Gunter,* 636 S.W.2d 437, 441 (Tenn.Ct.App.1982), and by giving the policy's language its common and ordinary meaning. *Tata v. Nichols,* 848 S.W.2d 649, 650 (Tenn.1993); *Parker v. Provident Life & Accident Ins. Co.,* 582 S.W.2d 380, 383 (Tenn.1979). We are not at liberty to rewrite an insurance policy simply because we do not favor its terms or because its provisions produce harsh results. In the absence of fraud, overreaching, or unconscionability, the courts must give effect to an insurance policy if its language is clear and its intent certain. *Quintana v. Tennessee Farmers Mut. Ins. Co.,* 774 S.W.2d 630, 632 (Tenn.Ct.App.1989).

The termination provisions in the Blacks' policy authorized Ætna to cancel the policy for nonpayment of premium anytime during the policy period after giving at least ten days notice by mailing a notice of cancellation to the named insured at the address shown in the policy. They also stated that "[p]roof of mailing of any notice shall be sufficient proof of notice" and that the "effective date of cancellation stated in the notice shall become the end of the policy period."

■ Termination provisions such as these are consistent with Tenn.Code Ann. § 56–7–1303(a)(1)(A) (1994), and the courts have repeatedly enforced them. *Calvert Fire Ins. Co. v. American Nat'l Bank & Trust Co.,* 222 Tenn. 515, 518, 438 S.W.2d 545, 546 (1969); *Cherokee Ins. Co. v. Hardin,* 202 Tenn. 110, 116–18, 302 S.W.2d 817, 819–20 (1957). Thus, an insurance company may effectively cancel a policy by adhering strictly to the procedures spelled out in the policy even if the insured does not receive the notice of cancellation. *Quintana v. Tennessee Farmers Mut. Ins. Co.,* 774 S.W.2d at 633.

## III.

The Blacks do not insist that the termination provision in their policy is contrary to public policy or that Ætna did not comply with the policy's notice of cancellation requirements. Instead, they attempt to distinguish their claim from other unsuccessful

claims on two grounds. First, they assert that Ætna should not be permitted to deny coverage because they complied with its agent's instructions concerning the payment of the semiannual premium. Second, they assert that their partial payment of the semiannual premium should have extended their coverage through the date of their loss. We disagree on both counts.

## A.

### MS. TEMPLETON'S INSTRUCTIONS

■ Even if Ms. Templeton was Ætna's agent,[1] none of her statements to Ms. Black concerning the payment of their premium altered the policy's provisions requiring the timely payment of premiums or Ætna's authority to cancel the policy if the premiums were not paid in a timely manner. If anything, her advice to pay at least the minimum amount reinforced the policy's payment requirements.

Ms. Templeton told Ms. Black that Ætna would send them a bill for the remaining premium. Ætna, in fact, sent the Blacks a revised declarations page and statement for the remaining premium approximately two weeks later.[2] Thus, Ætna's actions were completely consistent with Ms. Templeton's representations to Ms. Black. Nothing Ms. Templeton said can be construed as shifting the risk of non-delivery of the premium notice or the notice of cancellation from the insured, where it has been placed by statute and contract, to the insurance company.

## B.

### PRO RATA COVERAGE

■ The Blacks also assert that their payment of a portion of the premium should, as a matter of law, have extended their coverage past June 2, 1991. This argument must fail for two fundamental reasons. First, their policy did not provide for pro rata coverage for partial payment of the premium. Second, even if the policy could be construed to provide pro rata coverage, the Blacks' $221 payment would only have extended the coverage through May 30, 1991.[3]

The Blacks' obligation to pay premiums is prescribed in their insurance policy and in the premium notices. The first page of their policy states that Ætna's obligations are "[i]n return for payment of the premium," and the termination provision in their policy permits Ætna to cancel for "nonpayment of premium." The premium notice and the notice of cancellation permitted the Blacks to pay in installments but contained specific minimum payments and deadlines in order "to prevent cancellation of your policy."

Ætna's March 9, 1991, notice stated that the Blacks must make a minimum payment of $53 before April 9, 1991, in order to keep their policy in force. When the Blacks missed this deadline, Ætna informed them that they must make a minimum payment of at least $177 on or before May 9, 1991, in order to prevent cancellation of the policy. When the Blacks missed this deadline, Ætna was entitled to cancel the policy in a manner consistent with Tenn.Code Ann. § 56–7–1303(a)(1)(A).

Placing the risk of non-delivery of notices of cancellation on the insured creates harsh results such as the result in this case. However, the General Assembly has placed this risk squarely on the insured's shoulders as long as the insurance company can prove that it duly mailed the notice of cancellation

1. Tenn.Code Ann. § 56–6–147 (1994) provides that "[e]very insurance agent ... who solicits or negotiates an application for insurance of any kind shall, in any controversy arising from the application for insurance or any policy issued in connection therewith between the insured or insured's beneficiary and the insurer, be regarded as the agent of the insurer and not the insured or insured's beneficiary."

2. The trial court erroneously concluded that Ætna did not send the Blacks a notice of the change in their premium until the April 23, 1991 notice of cancellation. In fact, the first notice of the change in the premium was sent to the Blacks on March 9, 1991.

3. After their deductible was raised to $500, the Blacks' premium for the period from March 9 to September 9, 1991, would have been $491. Their March 1 payment of $221 was, therefore, 45% of the total premium for the 184–day period. Forty-five percent of 184 days is 83 days, and 83 days from March 9, 1991, would be May 30, 1991.

to the insured at the address shown in the policy declaration. Ætna proved that it mailed a proper notice of cancellation to the Blacks on April 23, 1991, and therefore, it could properly cancel its policy on May 29, 1991, when it did not receive a minimum payment from the Blacks.

## IV.

■ As a final matter, we turn to Ætna's obligation to refund any unearned premium to the Blacks following the cancellation of their insurance. The policy itself states that refunding the unearned premium is not a condition of cancellation,[4] and Tennessee has no common law requirement that conditions the effectiveness of a cancellation on the refund of an unearned premium. *See Wallace v. State Farm Mut. Auto. Ins. Co.,* 187 Tenn. 692, 699–700, 216 S.W.2d 697, 700–01 (1949); *Osborne v. Atlas Assurance Co.,* 61 Tenn.App. 618, 632, 457 S.W.2d 364, 370 (1969).

The record contains no proof that the Blacks are entitled to the refund of an unearned premium. In the absence of this proof or of a legal basis for conditioning the cancellation of an insurance policy on the refund of an unearned premium, we find that Ætna's failure to return the Blacks' unearned premium did not undermine the effectiveness of the termination of the Blacks' automobile insurance.

## V.

We reverse the judgment and remand the case to the trial court for the entry of an order dismissing the Blacks' complaint against The Ætna Casualty and Surety Company. The costs of appeal are taxed to Stephen and Barbara Black for which execution, if necessary, may issue.

TODD, P.J. (M.S.), and LEWIS, J., concur.

---

4. The policy states that "[i]f this policy is cancelled, you may be entitled to a premium refund. If so, we will send you the refund. However, making or offering to make the refund is not a condition of cancellation."