# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### SEPTEMBER 15, 2003 Session

## URSULA WIMPEE v. GRANGE MUTUAL CASUALTY COMPANY

**Direct Appeal from the Circuit Court for Shelby County**
**No. 90387-1 T.D.     John R. McCarroll, Jr., Judge**

---

**No. W2002-02795-COA-R3-CV - Filed Decmeber 31, 2003**

---

This appeal, from a grant of summary judgment, involves the interpretation of a homeowner's insurance policy. The lower court found that the policy covered water damage caused by the back-up of the neighborhood's exterior sewers and drains. For the following reasons, we reverse the judgment of the lower court and remand for further proceedings.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Craig B. Flood, II, Memphis, TN, for Appellant

Howard B. Manis, Memphis, TN, for Appellee

### OPINION

#### Facts and Procedural History

The facts of this case are not disputed by either party. Prior to the events at issue, Ursula Wimpee ("Ms. Wimpee") purchased a Homeowner's Policy, special form HO-3, from Grange Mutual Casualty Company ("Grange"). Ms. Wimpee also purchased Homeowner's Vantage Plus Endorsement, HO520, which provided additional coverage as set out in the terms of the endorsement. Taken as a whole, this policy provided coverage against a number of potential losses for Ms. Wimpee's residence at 6539 Cherry Hill Parkway in Memphis, Tennessee. The policy and the endorsement were both in full effect at all times relevant to this action.

On July 24, 1996, an unusually heavy afternoon storm dumped an official 4.1 inches of rain on the area in which Ms. Wimpee's home is located. The heavy rains resulted in flooding, which

caused property damage in the neighborhoods of Cherry Hill Planned Development, Phase One and Quail Point. A drainage analysis of the area was conducted by W.H. Porter & Co., Inc. on January 20, 1998, to explain the reasons for the flooding in that area. The resulting report concluded, in relevant part, that:

> The flood of July 24, 1996 occurred when the underground system in Quail Hollow Road became fully loaded, hydraulic gradients exceeded ground surface elevations and a considerable amount of water was carried on the surface. The resultant flow of surface water exceeded curb height in Quail Hollow Road and entered Cherry Hill Parkway. The inlets in Cherry Hill Parkway were already dysfunctional due to hydraulic gradient restrictions imposed by the over capacity principal drainage system.

The report stated that the neighborhood was not equipped with any emergency conduits or culverts which might safely divert this flood water away from homes. Instead, the water crossed through several residents' property, including that of Ms. Wimpee, on its way to a natural ditch and flood plain on the other side of the neighborhood.

After the flooding, Ms. Wimpee filed a claim under her homeowner's policy and endorsement to cover the water damage incurred when her residence flooded. Grange denied the claim, stating that the loss was not recoverable under the policy nor the endorsement. Ms. Wimpee then filed suit in Shelby County General Sessions Court, alleging that Grange breached the insurance contract by refusing to pay for her damages. After a consent judgment was entered, the matter was appealed and filed with the Shelby County Circuit Court on September 26, 1997. On May 13, 2002, Ms. Wimpee filed a motion for summary judgment supported by a statement of undisputed facts and memorandum of law. Grange responded by filing its own motion for summary judgment, likewise supported by a statement of undisputed facts and memorandum of law. Both parties focused on the same two provisions in support of their positions. The first provision, in the insurance policy, sets out certain exclusions for which Grange does not provide coverage:

> We do not cover loss resulting directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss . . .
> 3. Water damage, meaning:
> (a) Flood, surface water, waves, tidal water or overflow of a body of water. We do not cover spray from any of these, whether or not driven by wind;
> (b) Water which backs up through sewers or drains or which overflows from a sump; or
> (c) Water below the surface of the ground. This includes water which exerts pressure on or flows, seeps or leaks through any part of a building or other structure, sidewalk, driveway or swimming pool.

Both parties acknowledged that this language, standing alone, does not allow for any recovery for water damage. The parties disagreed, however, as to whether the endorsement, with its additional coverage, does allow for recovery. The endorsement states:

> 5. BACK-UP OF SEWERS OR DRAINS
> We cover risk of direct loss to the property described under Coverage A, Dwelling,
> Coverage B, Other Structures and Coverage C, Personal Property caused by water:
> a. which backs up through sewers or drains; or
> b. which enters into and overflows from within a:
>> 1. sump pump;
>> 2. sump pump well; or
>> 3. other type system;
> designed to remove surface water which is drained from the foundation area.

Ms. Wimpee argued that this provision, by its plain terms, covers water damage that results from the back-up of *any* sewers or drains, whether inside the residence or outside of it. As such, when the July 24, 1996 deluge caused the neighborhood's storm drains to back-up and overflow, the resulting flood water that damaged her home constituted the type of water covered by the endorsement. Grange argued, conversely, that the endorsement impliedly applies only to interior sewers and drains within the residence. Accordingly, damage resulting from the overflow of the exterior neighborhood sewers and drains would not be covered. After conducting a hearing, the trial court granted Ms. Wimpee's motion, finding as a matter of law that the endorsement covered the water damage incurred in her residence. Grange then timely filed the instant appeal.

## Issue

Grange raises one issue on appeal for our consideration:

> I.   Whether the trial court erred in granting Ms. Wimpee's motion for summary judgment and denying Grange's motion for summary judgment, based on the finding that the insurance contract covered the type of water damage sustained in Ms. Wimpee's residence.

## Standard of Review

This case comes before us on a grant of summary judgment. Summary judgment is properly entered in favor of a party when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04. Because summary judgment involves only questions of law and not factual disputes, no presumption of correctness attaches to the lower court's decision. Therefore, on appeal, we review the lower court's grant of summary judgment using a pure *de novo* standard. *Cowden v. Sovran Bank/ Contral South*, 816 S.W.2d 741, 744 (Tenn. 1991)(citing *Hill v. City of Chattanooga*, 533 S.W.2d 311, 312 (Tenn. Ct. App. 1975)).

## Law and Analysis

The present case requires us to interpret the provisions of a contract of insurance. We note, as an initial matter, that insurance contracts are subject to the same rules of construction as are other types of contracts. *McKimm v. Bell*, 790 S.W.2d 526, 527 (Tenn. 1990). The responsibility of this Court is to give effect to the intent of the parties by giving the policy's language its common and ordinary meaning. *Black v. Aetna Ins. Co.*, 909 S.W.2d 1, 3 (Tenn. Ct. App. 1995). Further, the insurance policy and its endorsements should be construed as a whole, in a reasonable and logical manner. *English v. Virginia Sur. Co.*, 268 S.W.2d 338, 340 (Tenn. 1954). Ambiguous language is to be construed most favorably to the insured, but where language is free from reasonable doubt, a contract must be given effect as written. *Ludlow v. Life & Cas. Ins. Co.*, 217 S.W.2d 361, 362 (Tenn. 1948). A court must not, under the guise of construction, create an ambiguity where none exists and thereby create a new contract between the parties. *Memphis Furniture Mfg. Co. v. Am. Cas. Co.*, 480 S.W.2d 531, 533 (Tenn. 1972). Instead, a court should give the contract a fair, reasonable and sensible construction. *Dixon v. Gunter*, 636 S.W.2d 437, 441 (Tenn. Ct. App. 1982).

The lower court found, as a matter of law, that the insurance contract between Ms. Wimpee and Grange covers the water damage to Ms. Wimpee's residence that resulted from the June 24, 1996 flood. We respectfully disagree. The primary insurance policy sets forth a general exclusion for any loss resulting from water damage. It specifically delineates three types of water damage that fall within the exclusion:

> 3. Water damage, meaning:
> (a) Flood, surface water, waves, tidal water or overflow of a body of water. We do not cover spray from any of these, whether or not driven by wind;
> (b) Water which backs up through sewers or drains or which overflows from a sump; or
> (c) Water below the surface of the ground. This includes water which exerts pressure on or flows, seeps or leaks through any part of a building or other structure, sidewalk, driveway, or swimming pool.

The endorsement then acts as an exception to the general proscription set forth in the policy. The endorsement provides that Ms. Wimpee's losses will be covered, but only for water damage of a specific type:

> We cover risk of direct loss . . . caused by water:
> a. which backs up through sewers or drains; or
> b. which enters into and overflows from within a:
> > 1. sump pump;
> > 2. sump pump well; or
> > 3. other type system;
> > designed to remove surface water which is drained from the foundation area.

Grange argues, and we agree, that, Ms. Wimpee's endorsement provides coverage only for those losses which were otherwise excluded in paragraph 3(b) of the homeowners provision listed above.

Losses occasioned by the other two types of water damage listed in paragraph 3, therefore, are still not covered. This necessarily means that losses occasioned by floods are not covered.

Ms. Wimpee argues that the endorsement fails to place any restrictions on the terms "sewers or drains." As such, water which backs up from *any* sewer or drain and subsequently causes damage to her residence, would fall within the scope of her coverage. This would include outdoor storm drains and sewers, such as the type that overflowed in the July 24, 1996 storm. We cannot agree with her argument. While it is true that ambiguous terms are to be resolved in favor of the insured if possible, we do not believe that the insurance contract, taken as a whole, admits of such an interpretation. It seems clear that paragraph 3(a), which excludes coverage for damage caused by floods, remains in effect despite the endorsement. This would seem to preclude an interpretation wherein the overflow of outdoor sewers and drains are covered by the endorsement. This is because outdoor drains and sewers will necessarily overflow or "back-up" during any flood. Indeed, floods would seem to occur only on those occasions where the amount of water introduced into an area exceeds the capability of its drainage system to contain the water. It would render provision 3(a) meaningless for us to adopt the interpretation urged by Ms. Wimpee and used by the lower court. We will not adopt such an interpretation, as all provisions in a contract are presumed to have meaning. *Associated Press v. WGNS, Inc.*, 348 S.W.2d 507, 512 (Tenn. Ct. App. 1961). We find, therefore, that the endorsement only provides coverage from losses arising from the back-up of interior sewers or drains within Ms. Wimpee's residence. The record indicates that Ms. Wimpee acknowledged, in her deposition, that all damage to her residence was occasioned by flood water from outside the house, rather than due to any back-up of interior sewers or drains. As such, we hold that the damage to her home is not covered by her insurance contract with Grange.

**Conclusion**

For the following reasons, we reverse the lower court's order granting summary judgment for Ms. Wimpee and remand for entry of summary judgment in favor of Grange. Costs of this appeal are taxed to the Apellee, Ursula Wimpee, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE