

# NUMBER 13-11-00361-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

CHRISTOPHER CARR,                                                    Appellant,

v.

THE STATE OF TEXAS,                                                  Appellee.

### On appeal from the 130th District Court
### of Matagorda County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Vela**
**Memorandum Opinion by Justice Rose Vela**

A Matagorda County grand jury indicted appellant, Christopher Carr, for nine counts of sexual assault of a child. *See* TEX. PENAL CODE ANN. § 22.011(a) (West Supp. 2011). The State abandoned three counts, and a jury convicted him of the remaining six. After finding appellant had one prior felony conviction, the jury assessed punishment for each offense at twenty years' imprisonment, plus a $10,000 fine. The court ordered the

concurrent sentences in counts two, five, and eight to run consecutively with the concurrent sentences in counts one, four, and seven. By five issues, appellant asserts: (1) he received ineffective assistance of counsel; (2) the prosecutor made improper remarks during closing argument; (3) the State committed prosecutorial misconduct; and (4) the trial court improperly stacked his sentences. We affirm.

## I. FACTUAL BACKGROUND

J.H. was fourteen years old when she began a sexual relationship with appellant. Prior to this relationship, she lived with her mother in Missouri and used the internet "[a]ll the time." She met appellant on a website called "T.S. Dating" and told him she was a 22-year-old model. Eventually, she told him she was seventeen years old, and he decided to visit her in Missouri. While in Missouri, appellant and J.H. engaged in sexual relations. At some point, he found out that J.H. was actually fourteen years old. Nevertheless, on December 18 or 19, 2009, he and J.H. went to his grandmother's house in Bay City, Texas where they stayed for three days. They planned to get married at some point in the future.

When the prosecutor asked J.H., "So, if you were there for a period of three days, you said every time y'all had sex it would be vaginal sex, his [appellant's] penis in your vagina, and oral sex, which would be his penis in your mouth?", she said, "Yes." At that point, the following exchange occurred between J.H. and the prosecutor:

Q. And those happened the days that you were here?

A. Yes.

Q. So, the 20th and 21st and the . . . 22nd, if the 23rd was the day you were picked up?

2

A.    I was picked up very late on the 23rd.   We had the whole day of the 23rd.

Q.    So, if I said the 20th, you had sexual intercourse and oral sex?

A.    Yes.

Q.    The 21st—

A.    Yes.

Q.    —sexual intercourse and oral sex, and the 22nd sexual intercourse and oral sex?

A.    Yes.

On December 23, 2009, David Maxwell, a Texas Ranger, interviewed appellant at the Bay City Police Department.   During this interview, appellant gave Ranger Maxwell a written statement in which he stated, in relevant part:

> I met [J.H.] on an alternate dating site on the internet back in October of 2009.   The name of the dating site is tsdating.com.   It is a dating site for transsexuals.   I was attracted to the site not because I have ever had a relationship with one but I was curious.
>
> [J.H.] started out by lying to me and telling me that she was a morphrodite.   We talked back and forth on this site for a couple of weeks, and then she started contacting me on Yahoo Messenger.   We talked back and forth there, and she told me that her name was Zane Tadesse.   We progressed from talking on Yahoo to talking on the phone.
>
> I then found what I thought was her cousin on Myspace, and it turned out to be [J.H.'s] mom.   Her name was [A.G.].[1]   When I was talking to [J.H.], she told me that she was 22 years of age and put a fake picture on the internet.   So, I did not really know what she looked like.   We even talked on video chat and she would hide her face from me and tell me that she did not want me to see her because she did not have any makeup on.   She told me that she had had bad acne.
>
> When I found her mom on Myspace and her profile said she had a

---

[1] To protect J.H.'s mother's privacy, we will not mention her name.

3

daughter [J.H.] that was 17 years of age, I just knew that Zane's—I just knew that was Zane's real name.

With all of this time talking to [J.H.] on the internet and the phone, I fell in love with her and so I wanted to travel to Missouri to see her. We would spend about eight hours a day talking on the phone or the internet each day.

* * *

After I found her on her mom's Myspace and found out that she was 17 years of age, with a birthday coming up, I asked her if I could come see her. I did not find out that she was 14 years of age until I got to her house and some of her friends told me she was 14 years of age with a birthday coming up in January.

When I found out that she was 14 years of age, I wanted to leave so badly but I was in love with her and I could not leave. I talked to [J.H.'s] mom and told her I wanted to marry [J.H.] and she told me that when [J.H.] turned 15 years of age that she would sign the consent for her to marry me. Her mom also consented for [J.H.] to come to Texas with me for Christmas.

[J.H.] and I have sex at least twice a day. [J.H.'s] mom knew that we were having sex and that we were having sex in her house. She did not seem to mind. . . .

When the prosecutor asked Ranger Maxwell, "During the course of this statement and during the course of your interview with him [appellant], did he admit to what would be criminal offenses here in the State of Texas?", he said, "Yes, he did." When asked, "And are those offenses sexual assaults of a child under the age of 17?", he said, "Yes." When the prosecutor stated, "The child being the little girl that y'all found, [J.H.]?", he said, "That's correct." When the prosecutor asked him, "And he [appellant] admits during the course of the statement and also in the interview with . . . him, . . . that he had been having sex with her [J.H.] here in Matagorda County?", he said, "That's correct."

4

The defense did not call any witnesses to testify at the guilt-innocence phase.

## II. DISCUSSION

## A. Ineffective Assistance of Counsel

In issue one, appellant contends he received ineffective assistance of counsel. Appellant divides his claims of ineffective assistance of counsel into six different categories. We separately address each claim.

### 1. Standard of Review

"The Sixth Amendment to the United States Constitution, and section ten of Article 1 of the Texas Constitution, guarantee individuals the right to assistance of counsel in a criminal prosecution." *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011) (citing U.S. CONST. amend. VI; TEX. CONST. art. 1, § 10). "The right to counsel requires more than the presence of a lawyer; it necessarily requires the right to effective assistance." *Id.* (citing *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970); *Powell v. Alabama*, 287 U.S. 45, 57 (1932)). "However, the right does not provide a right to errorless counsel,[2] but rather to objectively reasonable representation." *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 686 (1984)).

"To prevail on a claim of ineffective assistance of counsel, an appellant must meet the two-pronged test established by the U.S. Supreme Court in *Strickland*. . . ." *Id.* "Appellant must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defense." *Id.* (citing *Strickland*, 466 U.S. at 689). "Unless appellant can prove both prongs, an appellate court must not find counsel's representation to be ineffective." *Id.* (citing *Strickland*, 466

---

2 *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006).

U.S. at 687). "In order to satisfy the first prong, appellant must prove, by a preponderance of the evidence, that trial counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms." *Id.* "To prove prejudice, appellant must show that there is a reasonable probability, or a probability sufficient to undermine confidence in the outcome, that the result of the proceeding would have been different." *Id.* (citing *Strickland*, 466 U.S. at 687).

"An appellate court must make a 'strong presumption that counsel's performance fell within the wide range of reasonably professional assistance.'" *Id.* (quoting *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006) (citing *Strickland*, 466 U.S. at 689)). "In order for an appellate court to find that counsel was ineffective, counsel's deficiency must be affirmatively demonstrated in the trial record; the court must not engage in retrospective speculation." *Id.* (citing *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999)). "'It is not sufficient that appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence.'" *Id.* at 142–43 (quoting *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007)). "When such direct evidence is not available, we will assume that counsel had a strategy if any reasonably sound strategic motivation can be imagined." *Id.* at 143 (citing *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)). "In making an assessment of effective assistance of counsel, an appellate court must review the totality of the representation and the circumstances of each case without the benefit of hindsight." *Id.* (citing *Robertson*, 187 S.W.3d at 483).

6

The court of criminal appeals "has repeatedly stated that claims of ineffective assistance of counsel are generally not successful on direct appeal and are more appropriately urged in a hearing on an application for a writ of habeas corpus." *Id.* (citing *Bone v. State*, 77 S.W.3d 828, 833 n.13 (Tex. Crim. App. 2002); *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002)); *see Ex parte Nailor*, 149 S.W.3d 125, 131 (Tex. Crim. App. 2004). "On direct appeal, the record is usually inadequately developed and 'cannot adequately reflect the failings of trial counsel' for an appellate court 'to fairly evaluate the merits of such a serious allegation.'" *Id.* (quoting *Bone*, 77 S.W.3d at 833).

**Claims of Ineffectiveness**

**1. Opening the Door to Appellant's Criminal History**

Appellant contends defense counsel was ineffective because he "open[ed] the door" to appellant's two prior convictions for injury to a child. During his guilt-innocence opening statement, defense counsel provided a chronological rendition of what he believed the evidence would show. Afterwards, he told the jury, in relevant part:

> Now, there is more to this story than what I have just talked to you about. There is a history for which this man [appellant] served a significant amount of time in prison, some seven, eight years ago. He entered into an agreement with the State, this district attorney's office. Said, "I'll take my time. After, I was sick. It was a horrible thing." And he did. And he got counseling and he got medication and he got many, many, many, many days to think about the horrible thing that he did. So, I'm not going to tell you it's all roses. But we're here on this case to determine whether he did it, . . . .

After both sides completed opening remarks, the trial court held a hearing outside the jury's presence during which the prosecutor argued defense counsel had opened the door to appellant's prior convictions. The trial court agreed.

7

Even assuming defense counsel's performance was deficient because he opened the door to appellant's prior convictions, appellant has failed to satisfy the second prong of the two-part *Strickland* test, because he has not shown how his defense counsel's deficient performance prejudiced his defense. *See Strickland*, 466 U.S. at 688.

### 2. Introduction of Judgments of Conviction for Injury to a Child

Second, appellant contends defense counsel was ineffective because he introduced two judgments in evidence, showing appellant had two prior convictions for injury to a child. While cross-examining Ranger Maxwell at the guilt-innocence phase, defense counsel introduced in evidence two judgments, showing appellant had two previous convictions for injury to a child. Each judgment shows appellant pleaded guilty to the offenses of injury to a child.

Even assuming defense counsel's performance was deficient because he introduced the judgments of conviction into evidence, appellant has failed to satisfy the second prong of the two-part *Strickland* test, because he has not shown how his defense counsel's deficient performance prejudiced his defense. *See Strickland*, 466 U.S. at 688.

### 3. Opening Statement at Guilt-Innocence Phase

Third, appellant contends defense counsel was ineffective because he allegedly conceded appellant's guilt during his guilt-innocence opening statement. Appellant calls our attention to the following remarks made by defense counsel: "So, he [appellant] gets on a bus; and he comes up to meet her [J.H.] in Missouri. They meet. They spend the

8

weekend . . . at a hotel. They played games, and then they may have committed sex at that time. I think it's pretty clear that they did. In fact, I think my client admitted it in his statement that he gave to someone in the State of Missouri." Later during his opening statement, defense counsel told the jury, in relevant part, "Now, in a nutshell . . . we have deception and lies, resulting in consensual sex, . . . ."

The record is silent concerning defense counsel's motive for conceding that appellant had a sexual relationship with J.H. However, the evidence against appellant was strong. J.H. testified she and appellant had sex on three different days while they were in Bay City, Texas. Appellant confessed to Ranger Maxwell that he and J.H. had sex while in Matagorda County. Thus, defense counsel, knowing that the evidence would show J.H. was fourteen years old when she and appellant had sex in Matagorda County, could have been trying to minimize appellant's culpability by telling the jury that appellant and J.H. did have sex, but it was consensual, and J.H. had lied to appellant about her age.

### 4. Failure to Object

Fourth, appellant contends defense counsel was ineffective because he failed to object to: (1) the prosecutor referring to appellant as an "ex-con"; (2) references regarding the details of his prior convictions for injury to a child; and (3) the prosecutor's "suggestion" that he was a "child molester." We address each complaint separately.

### a. Referring to Appellant as an Ex-Con

The record is silent concerning why defense counsel did not object when the prosecutor referred to appellant as an ex-con. However, a possible strategy is that

defense counsel may have believed that if he objected each time the prosecutor referred to appellant as an ex-con, he would draw the jury's attention to that fact, even if the trial court sustained his objections.

**b. References to the Details of Appellant's Prior Convictions for Injury to a child**

During the State's guilt-innocence case-in-chief, the prosecutor elicited testimony from Susan Maxwell, an investigator for the Matagorda County District Attorney's Office, and from Ranger Maxwell, showing: (1) appellant had a prior conviction for injury to a child that resulted in his imprisonment; and (2) the child victim was two years old. In addition, the prosecutor asked Ranger Maxwell what injuries the child victim suffered. The prosecutor let Ranger Maxwell examine the court's files regarding appellant's two prior felony convictions for injury to a child and then asked him:

Q.  [C]an you tell us the . . . injury that caused the defendant to end up in T.D.C.?

A.  Yes. It states that it was a serious bodily injury to [E.C.], a child of 14 years of age or younger, by striking her with his hands with an unknown object rupturing her eardrum.

*   *   *

Q.  I don't think we talked about the other case, that would have been—this is the Cause 130.

A.  Yes. Would you like me to read it?

Q.  Uh-huh.

A.  "Did intentionally and knowingly cause bodily injury to [E.C.], a child of 14 years of age or younger, by biting her arm with his teeth."

10

In addition, appellant calls our attention to the prosecutor's direct-examination of J.H. and appellant's sister, Sarah Schafer. During the guilt-innocence phase, the prosecutor asked J.H.: "What did he [appellant] tell you about why he had been in prison?" To this, J.H. replied, "He had told me that he had gotten very angry with a young girl and he had severely damaged her arm." Also during the guilt-innocence phase, the prosecutor asked Schafer: "Did you ever know of a situation, a time in which he [appellant] went to prison?" She replied, "Eventually, . . . ." She stated the victim of the offenses for which appellant went to prison was a girl "[a]bout 3 years old."

The record is silent concerning why defense counsel did not object to the prosecutor's elicitation of the details of appellant's prior convictions. However, a possible trial strategy is that defense counsel may have believed that if he objected when a reference was made to the details of appellant's prior convictions, he would draw the jury's attention to those details, even if the trial court sustained his objections.

**c. Suggestion that Appellant was a Child Molester**

During the punishment phase, appellant's ex-girlfriend, R.P., testified that while she and appellant lived together, he tied her to the bed and left the bedroom. When he returned, he untied her, and she saw he was "sweaty." Appellant directs our attention to the following exchange between himself and the prosecutor:

Q. Why did you tie [R.P.] to the bed and come back sweaty?

A. [B]ecause we were about to have sex and she asked me to do that. I never in my life touched [E.C.][3] or any other child.

Q. Don't you talk to people about the fact that your mother sexually

_____

[3] The punishment evidence showed that E.C. is R.P.'s biological daughter, who lived with R.P. and appellant before appellant met J.H.

11

abused you? You've been talking about all these things that genetically go from one person to another.

A. Bipolar disorder.

Q. Don't you talk . . . to people about the fact that your mother sexually abused you?

A. Yes.

             \*   \*   \*

Q. And you and I both know you're a smart guy; that sexual abuse is something that runs in families as well.

A. I have never in my life touched a child like that.

Q. So, you never sexually abused [E.C.]?

A. No.

Appellant contends defense counsel should have objected to this colloquy and asserts that the prosecutor's comment that sexual abuse "runs in families" along with the fact that appellant's mother sexually abused him constitute a "suggestion" by the prosecutor that he "was a child molester[.]" The record is silent regarding why defense counsel did not object to the above-quoted exchange. However, the punishment evidence showed appellant physically abused E.C. on numerous occasions. A possible trial strategy is that defense counsel decided to let appellant answer the prosecutor's questions so he could deny in front of the jury that he sexually abused E.C. This showed that even though appellant physically abused E.C., he did not sexually abuse her.

**5. Closing Argument**

Fifth, appellant contends defense counsel was ineffective during punishment-phase closing argument because he injected his personal opinion that

appellant should have served more time in prison for his prior convictions for injury to a child. Specifically, appellant directs our attention to the following italicized remarks, which we put in context:

> [I]n . . . 2005, in March, he [appellant], in this court, enters a plea and announces to the court, "How do you plead to the charges brought against you for injury to this child?" "I plead guilty, your Honor."
>
> Two counts backed up by a statement, backed up by these pictures. . . . [A]nd the district attorney says okay, we're going to do this if the judge will accept it.
>
> The court . . . reviews it and accepts it. . . .
>
> *My client, as he should, as he darn well should, he goes to prison and he's there for about—a little short of 2,000 days. Probably not enough.* . . .

Defense counsel's reason for making the complained-of comment does not appear in the record. However, his strategy may have been to argue to the jury: (1) that appellant pleaded guilty to the two prior charges of injury to a child because the district attorney offered him a deal, which the trial court approved; and (2) this deal did not include enough prison time, which appellant needed for rehabilitation. This strategy allowed defense counsel to mitigate appellant's responsibility for committing the sexual-assault offenses against J.H. by shifting some of the blame for his conduct to the district attorney, for offering appellant a deal that included minimal prison time for two first-degree felony convictions, and to the judge for approving the deal.

In each of the five aforementioned allegations of ineffective assistance of counsel, the record is silent about defense counsel's reasons for his conduct, and a possible trial strategy exists for his actions. When, as in this case, "counsel's reasons for his conduct

13

do not appear in the record and there is at least the possibility that the conduct could have been legitimate trial strategy, we will defer to counsel's decisions and deny relief on an ineffective assistance claim on direct appeal." *Ortiz v. State*, 93 S.W.3d 79, 88-89 (Tex. Crim. App. 2002). Based on this record, we cannot conclude that defense counsel's performance fell below an objective standard of reasonableness. *See Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). Even assuming defense counsel was deficient, appellant has failed to prove there is a reasonable probability that, but for defense counsel's deficiency, the result of the trial would have been different. *See Strickland*, 466 U.S. at 687.

### 6. Failure to Request a Limiting Instruction

Sixth, appellant contends defense counsel was ineffective because he failed to request a limiting instruction concerning extraneous conduct and testimony regarding his prior convictions for injury to a child. In the guilt-innocence charge, the trial court instructed the jury, in relevant part:

> There has been introduced evidence of extraneous crimes or bad acts other than the one charged in the indictment in this case. This evidence was admitted only for the purpose of assisting you, if it does, for the purpose of showing the defendant's motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, if any. You cannot consider the testimony unless you find and believe beyond a reasonable doubt that the defendant committed these acts, if any, were committed.

Absent evidence to the contrary, we presume the jury followed the trial court's instructions as set forth in the charge. See *Resendiz v. State*, 112 S.W.3d 541, 546 (Tex. Crim. App. 2003). Even assuming defense counsel was deficient for failing to request limiting instructions, appellant has failed to prove there is a reasonable probability

14

that, but for defense counsel's deficiency, the result of the trial would have been different. *See Strickland*, 466 U.S. at 687.   Issue one is overruled.

## B. State's Closing Arguments

In issues two and three, appellant contends the prosecutor made improper remarks during closing argument at both phases of trial.

### 1. Guilt-Innocence Phase

During the guilt-innocence phase, the prosecutor made the following complained-of argument:   "This little girl [J.H.] is not the first girl he's [appellant] met online and gone to another state to see.   She's the second that we know about."

### 2. Punishment Phase

During the punishment phase, the prosecutor made the following complained-of argument:   "You know, a picture is worth a thousand words; but I think these pictures of [E.C.] are worth a lot more.   If nothing else, hold him [appellant] accountable for what he did to that little girl [E.C.] in the one month she was dependent on him."

### 3. Preservation of Error

Appellant did not object to the above-quoted remarks.   When a defendant fails to object to jury argument, he forfeits his right to raise the issue on appeal, even if the issue is constitutional in nature.   *Threadgill v. State*, 146 S.W.3d 654, 670 (Tex. Crim. App. 2004); *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996).   Therefore, appellant waived error, if any, in these portions of the State's closing arguments.   Issues two and three are overruled.

## C. Prosecutorial Misconduct

In issue four, appellant contends the State committed prosecutorial misconduct by trying him as a "criminal generally," rather than for sexual assault of a child. During the State's punishment-phase closing argument, the prosecutor argued to the jury:

> You know, since December 23rd, 2009, when the name Chris Carr came to the forefront again, I've been waiting for right now, for this very second.
>
> You know what I wanted to say? I gotcha Chris Carr, I gotcha. We gotcha. Today is going to be your day, right now, right this very second.
>
> Now, [defense counsel] when he was talking about pleading him [appellant] to five years back then and talking about Steven Reis[4] if you look back through the papers on there, Steven Reis' name is not on it. Carla Post is the one who signed the plea bargain agreement[5] with this defendant.
>
> &ast; &ast; &ast;
>
> Because back in 2005 when this defendant must have skipped out of the courtroom with his five-year deal, we had a very injured 2-year-old non-verbal, a codefendant [R.P.] who wouldn't talk against him [appellant], and an injured child. And at that point the best thing we could do was get a little bit—a small pound of flesh from each of those defendants and we took that choice. We took the choice to take the five years.

At that point, defense counsel stated, "Your Honor, I'm going to object to this line of arguing. It's not in evidence. It's improper." The trial court overruled the objection.

The court of criminal appeals has stated that to preserve error for appellate review, a party's point of error on appeal must comport with the objection made at trial. *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002); *see also Braxton v. State*, 909 S.W.2d

---

[4] Steven Reis is the current Matagorda County District Attorney.

[5] This reference is to the plea-bargain agreement involving appellant's two prior convictions for injury to a child.

16

912, 918 (Tex. Crim. App. 1995) (stating that point of error raised on appeal must correspond to objection made at trial). Here, the point of error on appeal is that the State engaged in prosecutorial misconduct by trying appellant as a criminal generally. However, appellant's trial objection was that the prosecutor's closing argument was "not in evidence" and "improper." Accordingly, this complaint is not preserved because the point of error on appeal does not correspond to the trial objection. *See Wilson*, 71 S.W.3d at 349; *Braxton*, 909 S.W.2d at 918.

After the trial court overruled the aforementioned objection, the prosecutor continued her argument as follows:

> They don't want you to know that. That's the truth of the matter. This defendant was represented by Richard Manske, an attorney who's been practicing back then as long as [defense counsel] has. You think they didn't know the problems with our case back then? Heck, yeah, they did.
>
>         \*   \*   \*
>
> So, don't talk to me about not holding him [appellant] accountable for things that happened in the past.
>
>         \*   \*   \*
>
> I want us to scream at him [appellant]. You get life in prison, Chris Carr, for what you've done in our community. . . .

Appellant did not object to this portion of the argument. "As a prerequisite to presenting a complaint on appeal, a party must have made a timely and specific request, objection, or motion to the trial court." *Grant v. State*, 345 S.W.3d 509, 512 (Tex. App.—Waco 2011, pet. ref'd) (citing TEX. R. APP. P. 33.1(a)(1)(A)). Because no objection, request, or motion was made concerning the above argument, the complaint is not preserved for appellate review.

17

Next, appellant directs us to the prosecutor's cross-examination of appellant at the punishment phase:

Q. You . . . spent a lot of time talking to this jury about the fact that your father died, your mom left when you guys were young, you were off your meds at the time, as a result of some of the things that happened in your life you've become suicidal. Why are you telling us all this stuff?

A. Because.

Q. Because why?

A. That's how I feel about [E.C.]. I want to die.

Q. You want to die?

A. Yeah.

Q. Well, sadly, death isn't in the punishment range that we're allowed to give here in this courtroom. . . .

        \*   \*   \*

Q. You served almost your full five years?[6]

A. I served my entire five years.

Q. Do you know that the parole board got a copy of this letter where you said that it made you happy?

        \*   \*   \*

Does it make you madder at me?

A. No, not really angry at you.

Q. You're not?

A. I'm not really angry at you.

Q. You're not really angry at me. You changed your mind?

---

[6] The prosecutor is referring to the sentence appellant served for the offenses of injury to a child.

18

A.      I can't be.   The only reason you're here is because I did what I did.

                        *   *   *

Q.      Did you hit her [E.C.] with anything besides your fist?

A.      No.

Q.      Kick her?

A.      No.

Q.      I know you did.   You might as well tell us.

A.      No.

                        *   *   *

Q.      Are you getting angry with me now?

A.      No.   I'm angry with myself.

In all of these instances, no objection was made either to the prosecutor's questions or to appellant's responses.   Thus, error, if any, is not preserved for appellate review.   *See* TEX. R. APP. P. 33.1(a)(1)(A); *Grant*, 345 S.W.3d at 912.

In addition, appellant calls our attention to the following exchange between him and the prosecutor at the punishment phase:

Q.      Did you think that you had almost killed her [E.C.]?

A.      [T]ruthfully, if I had known it was that bad, I wouldn't be here right now.

A.      I know you keep talking about the fact that you're suicidal; but, frankly, I've never seen you actually try—

At that point, defense counsel stated, "Judge, is that a question or sidebar?   Object to it." The trial court sustained the objection.   The point of error on appeal is that the State

19

engaged in prosecutorial misconduct by trying appellant as a criminal generally; however, appellant's objection was that the prosecutor's question amounted to "sidebar." Accordingly, this complaint is not preserved because the point of error on appeal does not correspond to the trial objection. *See Wilson*, 71 S.W.3d at 349; *Braxton*, 909 S.W.2d at 918.

Lastly, appellant calls our attention to the prosecutor's closing remarks at the guilt-innocence phase:

> You know, it's funny to me that he [defense counsel] is now calling the defendant not a criminal. The defendant has been to prison out of this court for two offenses involving injuring a small child, causing serious bodily injury to a child who was less than 3 years old.

> \* \* \*

> This ain't his first rodeo. What you have sitting right here, this defendant, Christopher Carr is an ex-con. You have a 25-year-old ex-con who paroled out of prison to our county, who spends all his time apparently surfing porn sites on the internet.

> \* \* \*

> This little girl is not the first girl he's met online and gone to another state to see. She's the second that we know about.

Because no objection was made to this argument, appellant forfeits his right to raise the issue on appeal, even if the issue is constitutional in nature. *See Threadgill*, 146 S.W.3d at 670; *Cockrell*, 933 S.W.2d at 89. Therefore, appellant waived any error in this portion of the State's closing argument. Issue four is overruled.

## D. Stacking of Sentences

In issue five, appellant contends the trial court erred by improperly cumulating his sentences. The jury returned a verdict of guilty on counts one, two, four, five, seven, and

eight.   On the State's motion, the trial court ordered that;   (1) counts two, five, and eight "run concurrently with each other"; (2) counts one, four, and seven "run concurrently with each other"; (3) the concurrent sentences in counts two, five, and eight "run consecutively to the concurrent sentences" in counts one, four, and seven; and (4) the concurrent sentences of counts two, five, and eight "shall begin only when the judgment and concurrent sentences in counts one, four, and seven have ceased to operate."

Texas trial courts have the discretion to order cumulative sentences in virtually every case.   *See* TEX. CODE CRIM. PROC. ANN. art. 42.08(a) (West Supp. 2011); *Millstagle v. State*, 150 S.W.3d 781, 784 (Tex. App.—Austin 2004, pet. dism'd untimely filed). However, when multiple offenses arising out of the same criminal episode are consolidated for a single trial, and the defendant is found guilty of more than one offense, Section 3.03(a)[7] of the Texas Penal Code limits the trial court's discretion to cumulate the sentences.   *Millstagle*, 150 S.W.3d at 784.   Section 3.03(b)(2)(A) creates an exception to this exception; that is, it exempts certain offenses, including sexual assault of a child, from the application of Section 3.03(a).   *See* TEX. PENAL CODE ANN. § 3.03(b)(2)(A) (West 2011).

Until 1995, Section 3.03 required sentences for multiple offenses prosecuted in a single trial to run concurrently.   *See DeLeon v. State*, 294 S.W.3d 742, 745 (Tex. App.—Amarillo 2009, pet. ref'd).   In that year, the Texas Legislature amended Section

---

[7] Section 3.03(a) provides:

> When the accused is found guilty of more than one offense arising out of the same criminal episode prosecuted in a single criminal action, a sentence for each offense for which he has been found guilty shall be pronounced.   Except as provided by Subsection (b), the sentences shall run concurrently.

TEX. PENAL CODE ANN. § 3.03(a) (West Supp. 2011).

21

3.03 to restore the trial court's discretion to impose consecutive sentences for multiple intoxication manslaughter convictions resulting from a single trial. *See* Act of May 26, 1995, 74th Leg., R.S., ch. 596, § 1, 3435, 3435; *DeLeon*, 294 S.W.3d at 745. In 1997, the Texas Legislature further amended Section 3.03 to add some sexual offenses committed against a victim younger than seventeen to the list of offenses subject to consecutive sentencing when there are multiple convictions in a single trial. Those offenses include sexual assault of a child. *See* Act of May 31, 1997, 75th Leg., R.S., ch. 667, § 2, 2250, 2251. *DeLeon*, 294 S.W.3d at 745. Those amendments became effective on September 1, 1997 and applied to offenses committed on or after the effective date of the Act. *See* Act of May 31, 1997, 75th Leg., R.S., ch. 667, § 2, 2252, 2253.

In *DeLeon*, the State prosecuted the defendant for offenses during a criminal episode spanning eight years and comprising aggravated sexual assault, sexual assault, and indecency with a child. *DeLeon*, 294 S.W.3d at 744. DeLeon received concurrent sentences of imprisonment for offenses committed before September 1, 1997, and consecutive sentences of imprisonment for offenses committed after that date. *Id.* The *DeLeon* court considered the issue of the trial court's discretion with regard to consecutive sentencing when Section 3.03(b) offenses committed after the effective date of the 1997 amendment are tried together with such offenses committed before the effective date. The court stated:

> We think the answer to the question presented is found in the statutory language establishing the effective date of the 1997 amendment to section 3.03. As the Court of Criminal Appeals pointed out in *Bahena*, 195 S.W.3d at 705, the legislature used different "effective dates" language in the 1995

22

and 1997 amendments. The legislature made the 1995 amendment, permitting consecutive sentences for multiple intoxication manslaughter convictions, applicable only if each offense joined for trial was committed on or after the amendment's effective date, September 1, 1995. The effective date language of the 1997 amendment does not contain such a provision. The 1997 statute simply states that its change in law applies only to "an offense committed on or after" its effective date, September 1, 1997, and that offenses committed before that date are subject to the law in effect when the offense was committed. Act of May 31, 1997, 75th Leg., R.S., ch. 667, §§ 7, 8, 2250, 2252-53. (footnotes omitted).

*DeLeon*, 294 S.W.3d at 746–47. The *DeLeon* court found that the trial court had discretion to cumulate sentences for the offense committed after September 1, 1997. *Id.* at 749.

In the instant case, all of the offenses occurred after September 1, 1997 when J.H. was younger than seventeen years old. Thus, we hold that the trial court did not abuse its discretion by ordering the concurrent sentences in counts two, five, and eight to run consecutively with the concurrent sentences in counts one, four, and seven. Issue five is overruled.

## III. CONCLUSION

We affirm the judgment of the trial court.


ROSE VELA
Justice


Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
13th day of December, 2012.

23