**RAPP CONSTRUCTION CO., INC., Plaintiff–Appellant,**

v.

**JAY REALTY COMPANY, INC. and Alan Godfrey Lee, et al., Defendants–Appellees.**

Court of Appeals of Tennessee, Western Section.

Jan. 9, 1991.

Application for Permission to Appeal, Denied by Supreme Court April 8, 1991.

John S. Richbourg, Memphis, for plaintiff-appellant.

Henry Klein, Memphis, for defendant-appellee, Jay Realty.

Michael McLaren, Memphis, for defendant-appellee, Alan Godfrey Lee.

CRAWFORD, Judge.

This case involves the interpretation of a construction contract. Although the present dispute began with a third party complaint, we see no reason to complicate the primary issue before this court by relating all of the preliminary pleadings which are not really involved. Basically the dispute is between the two parties to the contract, plaintiff-appellant, Rapp Construction Company, Inc., and defendant-appellee, Jay Realty Company. Defendant-appellee, Alan Godfrey Lee, et al., is the insurance carrier for Jay Realty Company, and, for the purposes of the case before us in its present posture, stands in the same

---

position as Jay Realty Company. References herein to Jay or defendant will apply likewise to Lee.

The contract in question between Jay as the owner and Rapp as the contractor provides for Rapp to construct streets and related drainage and sewers at Windyke Subdivision in Shelby County.

The present dispute stems from a fire loss to a quantity of pipe purchased by Rapp and delivered to the job site. The pipe was not installed nor incorporated into the project at the time of the fire loss.

Rapp sued Jay for the amount of the loss and contends that pursuant to the contract between the parties, Jay was obligated to insure the pipe for the protection of Rapp. Jay denies that the contract requires that it insure pipe which was not incorporated into the construction project. The trial court found that Jay had no obligation to insure the pipe and entered judgment for Jay and Lee.

Although Rapp's appeal presents three issues for review, it was conceded at oral argument that the procedural errors complained of are waived and the dispositive issue is whether the trial court erred in its construction of the contract between the parties.

The primary question is whether Jay, as the owner, is required by the contract to insure the pipe stored on the construction site before it is incorporated into the project. The trial court said no and Rapp says yes.

■ Interpretation of a written agreement is a matter of law and not of fact. *APAC—Tennessee, Inc. v. J.M. Humphries Const. Co.*, 732 S.W.2d 601 (Tenn. App.1986). In *APAC*, this Court said:

> The cardinal rule for interpretation of a contract is to ascertain the intention of the parties in consideration of the instrument as a whole. *Bob Pearsall Motors, Inc. v. Regal Chrysler–Plymouth, Inc.*, 521 S.W.2d 578 (Tenn.1975); *Rodgers v. Southern Newspapers, Inc.*, 214 Tenn. 335, 379 S.W.2d 797 (1964). In construing contracts, the words expressing the parties intentions should be given their

usual, natural and ordinary meaning and neither party is to be favored in their construction. *Brown v. Tennessee Auto. Ins. Co.*, 192 Tenn. 60, 237 S.W.2d 553 (1951); *Ballard v. North American Life & Casualty Co.*, 667 S.W.2d 79 (Tenn. App.1983).

> In the absence of fraud or mistake, a contract must be interpreted and enforced as written, even though it contains terms which may be thought harsh and unjust. *Ballard v. North American Life & Casualty Co., supra; E.O. Bailey & Co. v. Union Planters Title Guaranty Co.*, 33 Tenn.App. 439, 232 S.W.2d 309 (1949).

732 S.W.2d at 604.

The contract provision regarding the obligation of the owner, Jay, concerning property insurance is as follows:

**Property Insurance**

5.6. Unless otherwise provided in the Supplementary Conditions, OWNER shall purchase and maintain property insurance upon the Work at the site to the full insurable value thereof (subject to such deductible amounts as may be provided in the Supplementary Conditions or required by Laws and Regulations). This insurance shall include the interests of OWNER, CONTRACTOR, Subcontractors, ENGINEER and ENGINEER's consultants in the Work, all of whom shall be listed as insureds or additional insured parties, shall insure against the perils of fire and extended coverage and shall include "all risk" insurance for physical loss and damage including theft, vandalism and malicious mischief, collapse and water damage, and such other perils as may be provided in the Supplementary Conditions, and shall include damages, losses and expenses arising out of or resulting from any insured loss or incurred in the repair or replacement of any insured property (including but not limited to fees and charges of engineers, architects, attorneys and other professionals). If not covered under the "all risk" insurance or otherwise provided in the Supplementary Conditions, CONTRACTOR shall purchase and maintain

similar property insurance on portions of the Work stored on and off the site or in transit when such portions of the Work are to be included in an Application for Payment.

"Work" is defined in the contract under Article I—Definitions, as follows:

*Work*—The entire completed construction or the various separately identifiable parts thereof required to be furnished under the Contract Documents. Work is the result of performing services, furnishing labor and furnishing and incorporating materials and equipment into the construction, all as required by the Contract Documents.

Rapp asserts that the materials of the project are "separately identifiable parts" of the entire project. It argues that the contract obligates the contractor to order the materials as one of the services required of the contractor and that the contract definition of work includes "furnishing ... materials...."

We must disagree with Rapp's assertion. "Work," as defined in the contract is "the entire completed construction ... or the separate identifiable parts" of the construction. Work is the result of the things required of the contractor (Rapp) and includes the incorporating of the materials into the construction. Nothing in the contractual definition of work indicates that work includes material to be used in the construction but not yet made a part thereof.

Paragraph 5.6 of the contract requires the owner (Jay) to maintain property insurance upon "the Work." This requirement on the part of the owner coupled with the definition of work set out in the contract clearly evidences the intent of the parties that once the construction materials become a part of the realty the risk of loss should shift to the owner and be insured by the owner. This is made even more clear by consideration of the provision in paragraph 14.2 concerning application for progress payments under the contract. In addition to making an application for payment covering "the work completed as of the date of the application," this provision of the contract allows the contractor to request payment for materials and equipment not incorporated in the work but actually delivered and stored at the construction site. This material, not incorporated in the work, must be insured by the contractor to protect the owner's interest because when the owner pays for the material it clearly has an interest therein but the material is not a part of his realty covered by the property insurance furnished by owner.

Reading the contract as a whole, we find that the intent of the contract as evidenced by the usual and ordinary meaning of the words is for the owner to maintain insurance on the construction as part of the realty and that before material is incorporated into the construction project, the risk of loss is on the contractor. He may cover the risk by insurance or not, at his election. However, as noted above, should payment for materials not incorporated in the project be made by the owner, the contractor must then furnish insurance covering the owner's interest.

The trial court correctly interpreted the definition of "the Work" and the ultimate responsibility of the owner to furnish insurance. Accordingly, the judgment of the trial court is affirmed and this case is remanded to the trial court for such further proceedings as may be necessary. Costs of appeal are assessed against the appellant.

TOMLIN, P.J., (W.S.) and HIGHERS, J., concur.