IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 14, 2001

# DR. ROBERT EMANS v. THE BOARD OF REGENTS OF THE STATE OF TENNESSEE, ET AL.

**Appeal from the Tennessee Claims Commission, Middle Division
No. 40447701     W. R. Baker, Presiding Commissioner**

---

**No. M2000-02187-COA-R3-CV - Filed November 1, 2002**

---

The Claimant was appointed Dean of the College of Education of Tennessee State University in 1990, evidenced by a Notice of Appointment and Agreement of Employment. Four years later, he was terminated as Dean, and appointed to the tenured position of Professor, at a lesser salary. In this action he sought damages for breach of contract, inter alia. The Commission ruled that the Claimant, although lawfully terminated as Dean, was nevertheless entitled to receive the salary of a deanship.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Tennessee Claims Commission Reversed**

BEN H. CANTRELL, P.J., M.S., WILLIAM C. KOCH, JR., J., and WILLIAM B. CAIN, J.

Paul G. Summers, Attorney General and Reporter; Denielle Vonende Young, Assistant Attorney General, for the appellant, State of Tennessee.

Patrick T. McNally, Nashville, Tennessee, for the appellee, Dr. Robert Emans.

**OPINION
PER CURIUM**

Dr. Robert Emans ["Claimant"] filed this action against the Board of Regents of the State of Tennessee ["State"] before the Tennessee Claims Commission seeking a redress of grievances for breach of contract, unlawful discharge, promulgation of racial discrimination and retaliatory discharge resulting from his termination as Dean of the College of Education at Tennessee State University [TSU]. He sought equitable and monetary relief, which encompassed back pay and benefits, reinstatement as Dean, damages for embarrassment, humiliation, injury, relocation, and attorney fees.

The State filed a motion to dismiss the complaint in its entirety on grounds of (1) failure to state a claim, and (2) because the relief sought is barred by the doctrine of sovereign immunity, with the assertion that the "only relief allowed for breach of contract is actual damages only."

The Commissioner, mindful of the abjuration of Tenn. Code Ann. § 9-8-403(J),[1] pronounced his decision from the bench, finding that (1) the Claimant was an administrative appointee and thus not eligible for tenure status, (2) that his termination was valid, but that (3) ". . . [t]hey gave him a contract as a tenured professor at annual salary of $63,000.00 a year. And then they hauled off and started paying him $57,280.00. They just can't do that . . . . what they cannot do is violate the contract they entered into to give him a tenured full professorship at a salary no less than $63,000.00 a year . . ."

The judgment, prepared by counsel for the State, only one sentence in length, provides that "[t]he defendants shall pay the claimant the difference between what it has actually paid him since his termination for the Deanship on April 4, 1994 and the $63,000.00 a year provided for in the contract, including appropriate benefits."[2]

The State filed a Rule 59.04 Motion to Alter or Amend the Judgment on grounds that the ruling is not supported by the evidence because "it seeks to give relief to claimant on a ground which claimant has effectively waived," alleging that no evidence was presented "as to what the salary stated on the face of the contract was intended to govern."

The Commission denied the motion, holding, inter alia, that "[t]he contract is ambiguous because it refers both to 'Appointment as Dean of the School,' and also to 'Tenure'; [and that] administrative appointments like deanships do not have tenure, and so the contract's provision of 'Tenure' must govern something else, such as in the claimant's academic appointment."

The Commission reasoned further that the

"State led this claimant to depend on this contract with this condition [tenure] in it. Does the State now want to dishonor its contract and now say that 'Tenure' is not a condition of it? Such dishonor is beneath the dignity of the State and is unthinkable . . . . this Commission concludes that this contract's provision of 'Tenure' governs the amount of salary in the claimant's academic appointment. The only alternative to this conclusion is that the State deceived this claimant and tricked him into signing a contract which says on its face that it is governed by 'Tenure' . . . ."

---

[1] "The commission is encouraged to make oral decisions immediately after a hearing on any claim if the commission finds further deliberation is unnecessary . . ."

[2] Tenn. Code Ann. § 9-8-403(J) also provides "that if a claim is disposed of by an oral ruling, counsel for the prevailing party shall prepare and submit an appropriate order reflecting such ruling. Such order shall include proposed findings of fact and conclusions of law. . . ."

The Motion to Alter or Amend was denied. The State appeals, and presents for review, the sole issue of whether the Commission improperly denied the Motion to Alter or Amend. The Claimant does not appeal and presents no different issue for review. Appellate review is *de novo* on the record with the presumption that the judgment is correct unless the evidence preponderates against it. Rule 13(d) Tenn. R. App. P. As to conclusions of law there is no presumption of correctness.

The Claimant was formerly a Dean at William and Mary College, the University of Maryland, and the University of South Dakota. He learned of the vacant deanship at TSU and submitted his application. He was aware of the litigation styled *Geier v. Alexander, Gov., and the Board of Regents* wherein the plaintiffs alleged that the TSU President and Administrator had sought to bring about resegregation and maintain the black identity of TSU, which was settled by an agreement which provided, inter alia, for the establishment of a target of a 50 percent white faculty and upper level administration within five years. The TSU position was a challenging one; he realized that the *Geier* case created tensions, exacerbated by the fact that the Acting Dean of the College of Education, a Caucasian, was a candidate for the position.

Claimant testified that since he wanted to have all the job-security safeguards possible, he informed the Hiring Committee that he would accept the deanship only if he were given tenure.

Thereupon, the Claimant and TSU, on June 5, 1990, entered into a "Notice of Appointment and Agreement of Employment." It provides for the appointment of Dr. Robert L. Emans as "Dean of the School" in the Department of Education effective June 1, 1990 for an annual salary of $63,000.00.

It further provides:

This is to confirm your appointment to the position and salary outlined above, subject to the terms and conditions hereinafter set forth and your acceptance thereof:

1.    In consideration of the above salary, you agree to perform such duties at such times and places and in such manner as the institution through its representatives may from time to time direct. You further agree to faithfully perform the duties assigned to you to the best of your ability, and to devote your full-time to the institution, subject to the general supervision and pursuant to the orders, advice, and direction of the State of Tennessee, the policies and requirements of the State Board of Regents, and the policies and requirements of this institution.

2.    The above stated salary is payable at the above rate in accordance with institutional policies and contingent upon the approval of the State Board of Regents and State Government.

3.     This appointment is made subject to the laws of the State of Tennessee, the policies and requirements of the State Board of Regents, and the policies and requirements of this institution.

4.     This appointment is for an unspecified period unless otherwise indicated and shall continue for such time as the institution is in need of or desirous of your services. A probationary period of six (6) months is required of all newly appointed employees. During this period, this agreement may be terminated without prior notice. Thereafter, either the institution or the appointee may terminate this agreement without cause at anytime upon _____ days notice. The institution reserves the right to impose a probationary period at any time during employment, during which time advance notice of termination would not be applicable.

5.     The following special conditions shall govern this appointment.
Tenure

You must signify your acceptance of this appointment under the terms and conditions set forth by signing each copy of this notice.

In 1994 TSU terminated the Claimant's appointment as Dean of the College of Education, and demoted him to the academic rank of a tenured professor with a corresponding reduction in his compensation. The sole issue before us is whether the Commission properly awarded the Claimant, as damages for breach of contract, the difference in salary between a deanship and a tenured professor.

At the outset, we note that the finding of the Commission that tenure cannot be awarded to administrators is not contested on appeal. Neither does the Claimant contest the finding of the Commission that his appointment as Dean was at the will of TSU, and that he could be terminated at any time. Moreover, the finding of the Commission that "the essence of this contract is that Dr. Emans was being hired for two different jobs" is not questioned. It is not uncommon for senior members of a university's administration to hold both administrative and faculty appointments. Administration positions are not tenured. Faculty positions are tenured. When the Claimant was discharged from his position as Dean, he thereupon became a tenured professor; this conclusion is likewise unquestioned.

The Commission concluded that the contractual "provision of Tenure governs the amount of the salary in the claimant's academic appointment," i.e. that the Claimant, in his position as professor, should continue to be paid a Dean's salary.[3]

The State argues that the finding of the Commission is not supported by the evidence nor by the pleadings, because "the only issue . . . relative to salary dealt exclusively with the damage of back pay sought as a result of the wrongful termination of the Deanship." It is further insisted that the Commission erroneously concluded that the contractual salary provision of $63,000.00 was applicable not only to Claimant's deanship salary but also to his salary as a tenured professor. We are constrained to agree with this argument.

The parties agree that upon the Claimant's termination as Dean, he was appointed to the position of a tenured professor pursuant to policy. The Commission found, simply, that "tenure governs the amount of the salary of the claimant's academic appointment." We find no evidence in the record to support this finding. Neither is there any evidence in the record to support the Commission's finding that the "defendants gave [Claimant] a contract as a tenured professor at an annual salary of $63,000.00 a year." TSU appointed the Claimant as Dean of its College of Education and agreed to pay him, as Dean, $63,000.00 annually. The contract provides for termination at will, but that "tenure" is a special condition of the appointment. Both parties treated this somewhat cryptic phrasing as entitling the Claimant to a tenured professorship should the deanship be terminated, but, as stated, there is no evidence in the record to support a finding that the Claimant, as a professor, is entitled to a Dean's salary. The contract simply does not address the issue of the salary of a professor, and the record contains no evidence to justify the arrogation of authority by the Commission to fix the Claimant's salary under the guise of damages for breach of contract.

A tenured position entitled the Claimant to continued employment for an academic, as distinguished from a fiscal, year. An academic year is a nine-months span. A fiscal year is twelve months. The resulting anomaly was rationalized by the Commission thereby:

> "the contract does not require . . . the University [to] pay a 12-month fiscal year salary for only 9 months of work; since the contract provides for the claimant to be paid on a fiscal-year basis the University can expect him to work on a fiscal-year basis.

Suffice to state that the Board of Regents and TSU are authorized to determine policy pursuant to statutory authority, and that it is beyond the purview of the Commission or the courts to fix the amount of salaries or when they should be paid.

---

[3]The judgment reproduced on pages 3 & 4 is ambiguous, and a remand for clarification would ordinarily be required. For the purpose of this opinion, we interpret the judgment as requiring TSU to pay the difference on the wage scales of the respective positions during Claimant's actual tenure as a full professor.

The contract at the core of this litigation is form-based. It admittedly is not a model of clarity, but it requires no strained interpretation to determine the intent of the parties, and it should be interpreted and enforced as written. *Park Place Center Enterprises, Inc. v. Park Place Mall Assoc.*, 836 S.W.2d 113 (Tenn. Ct. App. 1992), *Rapp Constr. Co. v. Jay Realty Co.*, 809 S.W.2d 490 (Tenn. App. Ct. 1990).

The evidence preponderates against the judgment of the Commission. Accordingly, the judgment is reversed and the case is dismissed at the costs of the Claimant.

PER CURIUM