IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 11, 2006 Session

# DAVID HOLT, ET AL. v. BARBARA PYLES, ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 02C-1561     Walter Kurtz, Judge**

**No. M2005-02092-COA-R3-CV - Filed on April 24, 2007**

**AND**

# DAVID HOLT, ET AL. v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Davidson County**
**No. 02C-3394     Walter Kurtz, Judge**

**No. M2005-02094-COA-R3-CV - Filed on April 24, 2007**

This case concerns a motor vehicle accident in which serious injuries were sustained. The insured believed that his insurance policy provided excess coverage if he were to be involved in an accident with an uninsured or underinsured motorist. In forming this belief, he relied upon statements by the insurance agent and the summary pages of his policy. Following the accident, the insurance company denied that the insured maintained excess protection under his uninsured or underinsured motorist coverage, citing an exclusionary endorsement in the policy. The insured alleged that the policy was ambiguous. The trial court granted the insurance company's Motion For Summary Judgment, ruling that the policy was not ambiguous and that the insured's affidavit was insufficient to create a genuine issue of material fact as to the representations made by the insurance agent. The judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., J. joined. PATRICIA J. COTTRELL, J., filed a separate opinion concurring in part and dissenting in part.

Christina Norris, John L. Norris, Nashville, Tennessee, for the appellants, David Holt and Victoria Holt.

Barry L. Howard, Melissa Bradford Muller, Nashville, Tennessee, for the appellee, Encompass Insurance.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; Sarah F. Henry, Assistant Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. FACTUAL INFORMATION**

On July 20, 2001, David Holt ("Holt") sustained severe wrist and neck injuries in a car accident. Both injuries required surgical treatment and drastically affected Holt's everyday life. Two other drivers were involved in the accident. Barbara Pyles ("Pyles"), a state employee acting in the scope of her employment and driving a state owned vehicle, struck Roger Williams ("Williams") in the rear. The impact caused Williams, who was driving behind Holt, to strike Holt in the rear. Pyles was held to be solely at fault for the accident.

At the time of the accident, Holt maintained an automobile insurance policy with Encompass Insurance ("Encompass"). Holt and his wife ("the Holts") were living in Augusta, Georgia when he was transferred to Hendersonville, TN. The move took place from May to July of 2001. While living in Augusta, the Holts maintained automobile insurance, home protection insurance, and excess (umbrella) coverage insurance with CNA, which later became Encompass Insurance. During his move to Hendersonville, Holt contacted a local insurance agency, the AAA Auto Club in Madison, Tennessee, and requested that his policy be moved from Georgia to Tennessee.

At this point in time, Holt alleges that when he spoke with the agent in Madison, Tennessee, the agent informed him that Tennessee did not require drivers to have liability insurance and therefore a high percentage of Tennessee drivers were uninsured. Holt alleges that the agent further told him that in order for his excess coverage protection to "work properly" with the underlying coverages, the underlying coverages would have to match. Relying on the statements by the agent, Holt raised the limits of his un/under insured motorist coverage to make the uninsured motorist limits the same as the bodily injury limits. He believed this was necessary to ensure that his excess coverage protection would "work properly".

After purchasing the Encompass policy through the AAA agent, Holt received a copy of the entire policy. Upon receipt of the policy, Holt reviewed the first five pages representing the policy declarations/summary with the AAA Auto Club agent. On the first of five pages, under MOTOR VEHICLE PROTECTION, the coverages and limits are listed. The relevant coverages and limits are as follows:

| Coverages | Limits |
|---|---|
| Bodily Injury (per person/per accident) | $250,000/$500,000 |
| Property Damage (per accident) | $100,000 |

-2-

Uninsured Motorists

        Bodily Injury (per person/per accident)           $250,000/$500,000

        Property Damage (per accident)                 $100,000

On page three of five of the declarations/summary portion, the following appears:

**OPTIONAL EXCESS PROTECTION (Coverage applies only if a premium or limit is shown)**

| **COVERAGES** | **LIMITS** |
|---|---|
| EXCESS LIABILITY: applies to all "covered "exposures" and "additional covered exposures" | $1,000,000 |
| MINIMUM RETAINED LIMIT: You must maintain this amount of underlying insurance. | |
|     Underlying insurance on a Combined Single Limit basis: | $500,000 each accident |
|     Underlying insurance on a Split Limit basis: | $250,000 bodily injury each person |
| | $500,000 bodily injury each accident |
| | $100,000 property damage each accident |

Directly underneath the Optional Excess Protection provision, under the heading of GENERAL POLICY INFORMATION, the policy states: "The coverage and limits shown here are subject to the restrictions, conditions, and exclusions of the policy and its endorsements." The policy goes on to state that it is subject to a list of forms and endorsements, including one entitled OPTIONAL EXCESS LIABILITY COVERAGE. The Optional Excess Liability Coverage Endorsement, which numbers twelve pages in length, states the following in pertinent part:

**EXCESS LIABILITY COVERAGE**
INSURING AGREEMENT
We will pay damages for which a covered person becomes legally liable due to an occurrence resulting in personal injury, bodily injury, or property damage, up to the limit of liability shown in the Coverage Summary for "Optional Excess Liability". Any payment is subject to the minimum retained limit, the exclusions listed in the section called Losses We Do Not Cover and the other provisions of this endorsement.
...
LIMIT OF LIABILITY
You must maintain underlying insurance for each exposure shown in the Coverage Summary for "Optional Excess Liability", with not less than the liability limits shown in the Minimum Retained Limit definition. Except as provided in Provision 3, Self Insured Retention, under the General Provisions Optional Excess Liability coverage Endorsement, we will pay only the difference between:
1.      The Minimum Retained Limit amount shown in the Coverage Summary; and
2.      The total of what you legally have to pay;

and in no case more than the limit shown in the Coverage Summary for "Optional Excess Liability".

...

LOSSES WE DO NOT COVER

We do not provide any coverage under this endorsement for:

1.      Benefits payable to you or anyone else under any:

     a.     No-Fault;

     b.     Uninsured or Underinsured Motorist;

     c.     Medical Expense or Medical Payments;

     d.     Motorcycle Guest Passenger Liability;

     coverage, or any similar coverage.

By reading the declarations/summary portion of the policy, Holt believed that his excess liability coverage protection would apply to any un/under insured motorist claims. The basis for this belief was the fact that he chose, based on the alleged representations made by the AAA agent, to purchase un/under insured motorist limits that matched the bodily injury liability limits of the policy.

Following the accident, the Holts filed suit against Pyles and Williams. The Holts also served a summons on their insurer Encompass. On February 4, 2003, the Circuit Court issued an Order consolidating the Holts' claims against the State of Tennessee with the already pending action against Williams and Encompass. Eventually a voluntary nonsuit was entered in regard to Williams, leaving only the Holts, Encompass, and the State of Tennessee as parties to the suit.

On April 6, 2005, Encompass filed a Motion for Summary Judgment with the complete insurance policy attached. Encompass's Motion asked the Court to find that its policy had un/under insured motorist limits of $250,000/$500,000, and that the excess liability coverage of $1,000,000 did not provide excess un/under insured motorist coverage to Holt. Holt filed a Response in Opposition to Encompass's Motion for Summary Judgment on May 16, 2005. The Response argued that Encompass's policy provided Holt $1,000,000 of un/under insured motorist coverage in addition to the underlying un/under insured motorist coverage of $250,000/$500,000. In support of his argument, Holt attached his own affidavit.

The Trial Court granted Encompass's Motion for Summary Judgment. In its Memorandum and Order dated May 27, 2005, the Court stated in relevant part:

The Court does not find the insurance contract to be ambiguous. There is no doubt that many insurance contracts are complex and contain a number of exclusions. The Court is of the opinion that the exclusion here is clear and that the summary coverage page or policy coverage summary of the policy does not create an ambiguity that would bring into question the exclusion. The Court does not believe that "all covered exposures" or "optional excess protection" can be read as expansively as the plaintiffs assert.

. . .

-4-

After careful consideration, the Court finds that Encompass Insurance can have no contractual liability under the facts and circumstances of this case. The motion for summary judgment is granted. Encompass Insurance is dismissed from this lawsuit.

On August 15-16, 2005, the Trial Court conducted a non-jury trial with the State of Tennessee as the only remaining defendant in the matter. Tennessee Code Annotated § 9-8-307(e)[1] limits the State of Tennessee's liability for tort damages to $300,000 per claim. The Court held that "[g]iven the amount of medical expenses, and the effect of this injury on the plaintiff's life, the Court can easily set the damages at $300,000." Therefore, the trial court awarded damages to Holt against the State of Tennessee in the amount of $300,000.

Appellants the Holts seek reversal of the Trial Court's summary judgment ruling, presenting two issues on appeal. They first allege that the conflict between the broad description of excess insurance in the policy coverage summary and the terms of the Excess Liability Coverage endorsement create an ambiguity that must be resolved in favor of the insured so as to provide coverage. In the alternative, the Holts allege that David Holt's recollection of a misrepresentation made by the agent who sold him the policy in 2001 creates a genuine dispute as to a material fact on estoppel that precludes summary judgment. Appellee the State of Tennessee seeks dismissal of the appeal of the judgment against it, as "no issue has been raised which pertains to either the judgment or this defendant and because the judgment has been satisfied."

## II. STANDARD OF REVIEW

According to Tennessee Rule of Civil Procedure 56, a party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn.R.Civ.P. 56.04. When a summary judgment ruling is appealed, "[n]o presumption of correctness attaches to the trial court's findings in a summary judgment case . . . . We should not affirm a summary judgment if any doubt or uncertainty exists with regard to the facts or the conclusions to be drawn from the facts." *Burgess v. Harley*, 934 S.W.2d 58, 62 (Tenn.Ct.App.1996). The Tennessee Supreme Court stated the following regarding summary judgment:

> [T]he issues that lie at the heart of evaluating a summary judgment motion are: (1) whether a factual dispute exists; (2) whether the disputed fact is material to the outcome of the case; and (3) whether the disputed fact creates a genuine issue for trial . . . . When the party seeking summary judgment makes a properly supported motion,

[1] **9-8-307. Jurisdiction - Claims - Waiver of Actions - Standard for Tort Liability - Damages - Immunities - Definitions - Transfer of Claims.**

...

(e) For causes of action arising in tort, the state shall only be liable for damages up to the sum of three hundred thousand dollars ($300,000) per claimant and one million dollars ($1,000,000) per occurrence....

the burden then shifts to the nonmoving party to set forth specific facts, not legal conclusions, by using affidavits or the discovery materials listed in Rule 56.03, establishing that there are indeed disputed, material facts creating a genuine issue that needs to be resolved by the trier of fact and that a trial is therefore necessary.

*Byrd v. Hall*, 847 S.W.2d 208, 214-215 (Tenn.1993).

This Court has dealt with its share of summary judgment rulings, and has stated the following regarding the standard of review:

Summary judgments enjoy no presumption of correctness on appeal. *Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn.2000); *Burress v. Sanders*, 31 S.W.3d 259, 262 (Tenn.Ct.App.2000). Accordingly, appellate courts must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn.1997); *Mason v. Seaton*, 942 S.W.2d 470, 472 (Tenn.1997). We must consider the evidence in the light most favorable to the non-moving party, and we must resolve all inferences in the non-moving party's favor. *Memphis Hous. Auth. v. Thompson*, 38 S.W.3d 504, 507 (Tenn.2001); *Terry v. Niblack*, 979 S.W.2d 583, 585 (Tenn.1998); *Tamco Supply v. Pollard*, 37 S.W.3d 905, 908 (Tenn.Ct.App.2000). Questions relating to the interpretation of written contracts involve legal rather than factual issues. *Brandt v. Bib Enters., Ltd.*, 986 S.W.2d 586, 592 (Tenn.Ct.App.1998); *Rapp Constr. Co. v. Jay Realty Co.*, 809 S.W.2d 490, 491 (Tenn.Ct.App.1991). Insurance policies are contracts, and thus scope of coverage issues present questions of law. *Pile v. Carpenter*, 118 Tenn. 288, 296, 99 S.W. 360, 362 (1907); *Pennsylvania Lumbermens Mut. Fire Ins. Co. v. Holt*, 32 Tenn. App. 559, 566, 223 S.W.2d 203, 206 (1949).

*Merrimack Mutual Fire Ins. Co. v. Batts*, 59 S.W.3d 142, 147 (Tenn.Ct.App.2001).

### III. ANALYSIS

#### A. Ambiguity in the policy

Appellants the Holts argue that the insurance policy language is ambiguous. The Holts rely on the policy language on page three of the declarations/summary portion stating that the policy's excess coverage applied to "all covered losses" and "all additional losses". Further, the Holts rely on the Encompass agent's alleged statements indicating that they had $1,000,000 in coverage if ever injured in an automobile accident with an un/under insured driver. However, Encompass alleges that the insurance policy's excess coverage did not apply to un/under insured motorist claims. Encompass relies on the exclusionary language appearing later in the policy, and referred to on page three of the declarations/summary portion, stating that no coverage was provided for uninsured or underinsured motorist liability.

This Court has stated the following in regard to the construction and interpretation of insurance policies:

> The respective rights of an insured and an insurance company are governed by their contract of insurance. . . . Insurance contracts are subject to the same rules of construction that are used to interpret other types of contracts. *McKimm v. Bell*, 790 S.W.2d 526, 527 (Tenn.1990); *Hurley v. Tennessee Farmers Mut. Ins. Co.*, 922 S.W.2d 887, 892 (Tenn.Ct.App.1995). As with any other contract, the courts must give effect to the parties' intentions as reflected in their written contract of insurance. *Black v. Aetna Ins. Co.*, 909 S.W.2d 1, 3 (Tenn.Ct.App.1995); *Blaylock & Brown Constr. Co. v. AIU Ins. Co.*, 796 S.W.2d 146, 149 (Tenn.Ct.App.1990). The insurance policy should be construed as a whole in a reasonable and logical manner. *English v. Virginia Sur. Co.*, 196 Tenn. 426, 430, 268 S.W.2d 338, 340 (1954); *Standard Fire Ins. Co. v. Chester-O'Donley & Assocs., Inc.*, 972 S.W.2d at 7. The courts should interpret an insurance policy as written and should give the policy's terms their natural and ordinary meaning. *Tata v. Nichols*, 848 S.W.2d 649, 650 (Tenn.1993); *Moss v. Golden Rule Life Ins. Co.*, 724 S.W.2d 367, 368 (Tenn.Ct.App.1986). The insuring agreement defines the outer limits of an insurance company's contractual liability. *Standard Fire Ins. Co. v. Chester-O'Donley & Assocs., Ltd.*, 972 S.W.2d at 7. The courts are not at liberty to rewrite an insurance policy solely because they do not favor its terms, *Black v. Aetna Ins. Co.*, 909 S.W.2d at 3, and must avoid forced constructions that render a provision ineffective or extend a provision beyond its intended scope. *Demontbreun v. CNA Ins. Cos.*, 822 S.W.2d 619, 621 (Tenn.Ct.App.1991). In the absence of fraud, overreaching, or unconscionability, the courts must give effect to a provision in an insurance policy when its terms are clear and its intent certain. *Quintana v. Tennessee Farmers Mut. Ins. Co.*, 774 S.W.2d 630, 632 (Tenn.Ct.App.1989).

*Merrimack Mutual Fire Ins. Co. v. Batts*, 59 S.W.3d 142, 148 (Tenn.Ct.App.2001). Further, this Court stated that as long as a policy's terms are unambiguous, it will be enforced as written, and that courts cannot rewrite an unambiguous policy simply to avoid harsh results. *Certain Underwriters at Lloyd's of London v. TransCarriers, Inc.*, 107 S.W.3d 496, 499 (Tenn.Ct.App.2002). Therefore, the insured cannot simply focus on the declarations/summary portion of a contract in isolation; the policy must be read as a whole.

While there are no Tennessee cases directly on point, several other jurisdictions have held that the declarations portion of a contract cannot be construed in isolation from the remainder of the contract. *See Malmay v. Sherman*, No. Civ.A. 02-2294, 2003 WL 22077786 (E.D. La. Sept. 8, 2003); *Hobbs v. Hartford Ins. Co.*, 823 N.E.2d 561 (2005); *Royal Prop. Group, LLC, v. Prime Ins. Syndicate, Inc.*, 706 N.W.2d 426 (2005).

The exclusionary language of the policy is clear. The main focus of this analysis centers on the declarations/summary portion, or pages one through five, of the policy. Page one does in fact include uninsured motorists under the coverages of the policy. On page three, under Optional Excess Protection, the policy states that the excess liability coverage "applies to all 'covered exposures' and 'additional covered exposures'".

However, immediately following Optional Excess Protection is the General Policy Information, which specifically in bold print states that "[t]he coverage and limits shown here are subject to the restrictions, conditions, and exclusions of the policy and its endorsements." Immediately following this statement, and printed in all bold caps, the policy states: "Your policy is subject to the following forms and endorsements." The fifth endorsement listed is "G-18544-F (10-98) OPTIONAL EXCESS LIABILITY COVERAGE". The exclusionary language relied upon by Encompass appears in this endorsement.

Insurance policies are, by nature, somewhat intimidating. However, the excessive length, intricate provisions, and attention to detail are necessary evils. The point of a summary portion of an insurance policy is just that, to provide a brief summary of the contents of the policy. It is impossible to include all of the important provisions of the policy in the summary, because then it becomes much more than a summary. The endorsement containing the exclusionary language is plainly alluded to in the summary, alerting the insured that there may be possible limitations to the policy. When read as a whole, the policy and its intent are clear.

We conclude that the Encompass insurance policy is not ambiguous. While extensive, its effect is clear: Encompass did not intend to provide excess coverage for accidents with un/under insured motorists, and specifically stated so in the policy.

### B. Genuine Dispute as to Material Fact - Estoppel

The relevant portion of Holt's affidavit states as follows:

2.      During the time I was moving to Hendersonville, I contacted a local insurance agency, the AAA Auto Club in Madison, Tennessee, and requested that my entire policy be moved to Tennessee. I had to sign an application for a new insurance policy. The agent told me that Tennessee did not require drivers to have liability insurance and that a high percentage of Tennessee drivers were uninsured. The agent also told me that, in order to make my policy work, the policy limits would have to be synchronized. When I talked with the agent, I had no opportunity to review the precise language of the excess coverage in the insurance contract and I relied on what the agent told me. The agent told me that in order for my excess coverage protection to work properly with the underlying coverages, the underlying coverages would have to match. Based on this information, I raised the limits of my uninsured motorist coverage. I believed that my excess coverage protection would apply to

uninsured motorist claims because the policy was changed to make the uninsured motorist limits the same as the bodily injury limits. The uninsured motorist premium and the excess protection premium were higher in Tennessee than they had been in Georgia.

3. I received and reviewed the declarations/summary of my new policy with a AAA Auto Club agent before the accident with Barbara Pyles. I made sure all of the underlying limits matched as the agent had told me they needed to. Since the underlying limits under Motor Vehicle Protection of my bodily injury, uninsured motorist - bodily injury, property damage, uninsured motorist - property damage and home protection personal liability limits were in the amounts specified under the Optional Excess Protection section of the policy declarations, I believed I had excess coverage if I was in a wreck with an uninsured or underinsured driver and my damages exceeded the uninsured motorist limits.

4. After the wreck caused by Barbara Pyles, who was driving a van owned by the State of Tennessee, on July 20, 2001, I had telephone conversations with a number of adjusters for Encompass Insurance, including Linda Maxwell. By late March of 2002, I had already undergone surgery on my wrist, and Dr. Zellem was treating my neck injury. By mid-April, I knew cervical surgery was a possibility. I was having a lot of pain and knew that my claim could be substantial. In talking with one of the Encompass adjusters, almost certainly Linda Maxwell based on what has been provided by Encompass in discovery, the issue of the amount of my insurance coverage came up in late March or in April, 2002. The adjuster, whom I believe to be Ms. Maxwell, assured me that I had $1,000,000 of coverage, in addition to the underlying uninsured motorist policy limits, under my policy for the July 20, 2001 accident I had been communicating with her about if the other driver did not have enough insurance to cover my claim.

5. . . . Based on my dealing with the agent before the accident and my understanding of the coverage I had, I thought I had a million dollars of excess protection that would apply if I was injured in a wreck with an uninsured or underinsured motorist. I thought I had that coverage for the July 2001 accident that was caused by Ms. Pyles, and that belief was reinforced by what the Encompass adjuster told me in March or April of 2002. My review of the policy declarations also supported that belief.

In its May 27, 2005 Memorandum and Order granting Encompass's Motion For Summary Judgment, the trial court stated the following in regard to Holt's affidavit:

The plaintiffs also rely on estoppel. The plaintiffs correctly point out that an insurer could be estopped to deny coverage for any loss by misrepresentation of its agents upon which the insured reasonably relies. *See Bill Brown Construction v. Glenn Falls Insurance*, 818 S.W.2d 1, 4-12 (Tenn. 1991). There is no doubt that if the

insurance agent had told the plaintiffs that the umbrella policy would cover UM claims the movants would be estopped to deny that coverage. The statement of the agent, however, is not to that effect. According to the affidavit of the plaintiff, David Holt, based upon the agent's statement that the policy limits would have to be "synchronized." The agent "raised the limits of my uninsured motorist coverage." Mr. Holt then goes on to state "I believe that my excess coverage protection would apply to uninsured motorist claims because the policy was changed to make the uninsured motorist limits the same as the bodily injury limits." The Court does not interpret this as meaning that the insurance agent promised or stated that the umbrella policy would contain extra UM coverage. The affidavit returns again to his subjective belief that his umbrella policy somehow provides UM coverage. Such is not the case.

The main issue regarding Holt's affidavit is whether it is sufficient to show that there is a genuine issue of material fact that should have precluded the Trial Court from granting Encompass's Motion For Summary Judgment. Appellants the Holts allege that Encompass took an unreasonable amount of time in raising its policy exclusion defense, and therefore Encompass is estopped from requiring Holt to recollect, with more precision than already contained in his affidavit, the exact statements of the Encompass agent. Encompass, on the other hand, alleges that Holt's affidavit fails to establish either that Holt reasonably relied upon the statements of the agent to his detriment or that a genuine issue of material fact exists as to this issue. Encompass argues that this Court must look to the actual representations made by the agent, instead of any subjective conclusions Holt may have drawn.

Justice Brennan's explanation of the importance of the sufficiency of evidence in a summary judgment proceeding provides some guidance on the matter. Such explanation appears in *Celetex v. Catrett*, 477 U.S. 317, 331(U.S.1986):

If the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production in either of two ways . . . . Second, the moving party may demonstrate to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. See 10A Wright § 2727, pp 130-131; Louis, Federal Summary Judgment Doctrine: A Critical Analysis, 83 Yale L. J. 745, 750 (1974) (hereinafter Louis). If the nonmoving party cannot muster sufficient evidence to make out its claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law. *Anderson v. Liberty Lobby, Inc., ante*, at 249.

The Tennessee Supreme Court has also noted the importance of the sufficiency of evidence in summary judgment proceedings:

In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Byrd v. Hall*, 847 S.W.2d 208, 213 (Tenn.1993).

The trial court was correct in granting summary judgment to Defendant on the estoppel claim. The only evidence in the record on which estoppel is asserted is the affidavit of David Holt. This affidavit asserted in part:

3.      I received and reviewed the declarations/summary of my new policy with a AAA  Auto Club agent before the accident with Barbara Pyles.

Pages one and three of this five-page "new policy coverage summary" are vital to the estoppel question and are reproduced as follows:

## USP Special - Package
## New Policy Coverage Summary



ENCOMPASS.
INSURANCE

Formerly known as CNA Personal Insurance

**Policyholder:**
DAVID L HOLT
582 INDIAN LAKE ROAD
HENDERSONVILL TN 37075

**Agent:**
AUTO CLUB SOUTH INS INC - MADISON
2153 GALLATIN RD N - MADISON
P. O. BOX 31087
TAMPA FL 33631
PHONE: 800-891-4222  390-013683-0000

**Policy Number:**
US 216123730

**Policy Period:**
07/09/2001 to 07/09/2002 12:01 AM Standard Time

**Policyholder Since:**
07/2001

**Insurance Provided By:**
GLENS FALLS INSURANCE COMPANY
P.O.BOX 16020 READING,PA 19612-6020

24 HOUR CLAIM REPORTING 800-588-7400

### MOTOR VEHICLE PROTECTION
(Coverage applies only if a premium or limit is shown)

| | Vehicle 1 | Vehicle 2 |
|---|---|---|
| **Description:** | 1992  BUICK ROADMASTER | 1994  1994 FLEETWOOD |
| **VIN:** | 1G4BT5376NR449526 | 1G6DW52P0RR712785 |
| **Rated Driver:** | DAVID HOLT | VICTORIA HOLT |
| **Use:** | Work 10 miles | Work 03 miles |
| **Class Code:** | 814221 | 814220 |

| COVERAGES | LIMITS | PREMIUMS | LIMITS | PREMIUMS |
|---|---|---|---|---|
| BODILY INJURY (per person/per accident) | $ 250,000/500,000 | $ 232.00 | $ 250,000/500,000 | $ 169.00 |
| PROPERTY DAMAGE (per accident) | $ 100,000 | $ 112.00 | $ 100,000 | $ 82.00 |
| MEDICAL EXPENSE | $ 5,000 | $ 18.00 | $ 5,000 | $ 13.00 |
| UNINSURED MOTORISTS - | | | | |
| BODILY INJURY (per person/per accident) | $ 250,000/500,000 | $ See Below | $ 250,000/500,000 | $ See Below |
| PROPERTY DAMAGE (PD) (per accident) | $ 100,000 | $ See Below | $ 100,000 | $ See Below |
| $ 200 PD Deductible | | | | |
| COMPREHENSIVE (Comp) | $ 250 Deductible | $ 40.00 | $ 250 Deductible | $ 65.00 |
| COLLISION (Coll) | $ 500 Deductible | $ 237.00 | $ 500 Deductible | $ 250.00 |
| DEDUCTIBLE WAIVER | | | | |
| Deductible will be waived if your windshield is repaired, not replaced. | | | | |
| TOWING | $ 50 | $ 10.00 | $ 50 | $ 10.00 |
| EXTENDED TRANSPORTATION | | | | |
| Rental Reimbursement | $ 30/900 Per Day/Maximum | $ 26.00 | $ 30/900 Per Day/Maximum | $ 26.00 |
| Trip Interruption | $ 100/500 Per Day/Maximum | $ Included | $ 100/500 Per Day/Maximum | $ Included |
| Emergency Transportation | $ 20 | $ Included | $ 20 | $ Included |
| **Premium Per Vehicle** | | $ 675.00 | | $ 615.00 |

Premium for all "Uninsured Motorists-type" coverages are shown separately.

### DISCOUNTS AND CHARGES

| | Vehicle 1 | Vehicle 2 |
|---|---|---|
| Platinum Rate Level | Applied | Applied |
| Multiple Car Discount | Applied | Applied |

US 216123730

*Bernard L. Hengelburgh*
Chairman of the Board

*Jonathan Kanton*
Secretary

C 0724

Continued on Next Page

Page 01 of 05

414

-12-



ENCOMPASS.
INSURANCE

Formerly known as CNA Personal Insurance

## HOME PROTECTION                                    (Coverage applies only if a premium or limit is shown)

### MORTGAGEE/OTHER INTERESTED PARTIES INFORMATION

| Name | Loan Number | Type of Interest |
|---|---|---|
| MERRILL LYNCH CREDIT CORP<br>ISAOA<br>PO BOX 5954<br>SPRINGFIELD OH 45501 | | Mortgagee |

### DISCOUNTS AND CHARGES                             Residence 1

| | |
|---|---|
| Burglar Alarm Discount (central station reporting) | Applied |
| Fire Alarm Discount (central station reporting) | Applied |
| Loss Free Discount | Applied |

### TOTAL HOME(S) PREMIUMS AND CHARGES

**Discounts And Charges For All Homes**

| | |
|---|---|
| Package Discount | Applied |

| | |
|---|---|
| **Your Total Premium For All Homes** | $  1,196.00 |

## OPTIONAL EXCESS PROTECTION                         (Coverage applies only if a premium or limit is shown)

| COVERAGES | LIMITS |
|---|---|
| EXCESS LIABILITY: applies to all "covered exposures" and "additional covered exposures"<br>MINIMUM RETAINED LIMIT: You must maintain this amount of underlying insurance. | $1,000,000 |

Underlying insurance on a Combined Single Limit basis:     $500,000 each accident
Underlying insurance on a Split Limit basis:     $250,000 bodily injury each person
    $500,000 bodily injury each accident
    $100,000 property damage each accident

| | PREMIUMS |
|---|---|
| Motor Vehicle Premiums | |
| Vehicle 1 | $    53.00 |
| Vehicle 2 | $    53.00 |
| Residence Premiums | |
| Residence 1 | $    46.00 |
| **Total Annual Excess Liability Premium** | $    152.00 |

## GENERAL POLICY INFORMATION

The coverages and limits shown here are subject to the restrictions, conditions, and exclusions of the policy and its endorsements.

### YOUR POLICY IS SUBJECT TO THE FOLLOWING FORMS AND ENDORSEMENTS

| | | |
|---|---|---|
| G-18535-A | (09-93) | SPECIAL-HOME |
| G-18537-A | (09-93) | SPECIAL MOTOR VEHICLE |
| G-18538-A | (09-93) | INTRODUCTION |
| G-18540-A | (09-93) | GENERAL PROVISIONS |
| G-18544-F | (10-98) | OPTIONAL EXCESS LIABILITY COVERAGE |

US 216123730

C 0724

Continued on Next Page

416

Page one of the summary clearly shows coverages for bodily injury, property damage, medical expense, uninsured motorist bodily injury and uninsured motorist property damage.

On page three of the summary, under "Optional Excess Protection," the coverages are "EXCESS LIABILITY: applies to all 'covered exposures and additional covered exposures'" The limits under this coverage are $1 million, and the coverage is plainly for "excess liability." In order to trigger the "excess liability" coverage, the insured must maintain limits in the main policy of either a single limit $500,000 coverage for each accident or a split limit of $250,000 for bodily injury to each person and $500,000 bodily injury for each accident together with $100,000 property damage for each accident. The "Optional Excess Protection" provisions of the summary say nothing at all about uninsured motorist coverage. Uninsured motorist coverage in the main policy, which is separately listed under the coverages in the main policy, is not so listed among the "minimum retained limit" triggering the excess liability coverage under the $1 million "Optional Excess Protection."

It is clear that "excess liability" means liability of the insured. It applies to all "covered exposures" and "additional covered exposures." The insured has no "exposures" where uninsured-underinsured motorist coverage is concerned. Basically, first-party insurance provides insurance money to the insured because of the "exposure" of some at-fault third party who injures the insured.

Any doubt as to this limitation of the umbrella coverage to "excess liability" is made indisputable by that same third page of the "New Policy Coverage Summary" wherein it is provides:

Your policy is subject to the following forms and endorsements:

. . .

G/18544/F (10-98) Optional Excess Liability Coverage

When one looks to form G-18544F (10-98) Optional Excess Liability Coverage, it is clearly stated:

LOSSES WE DO NOT COVER

We do not provide any coverage under this endorsement for:

1.      Benefits payable to you or anyone else under any:

    a.      No-fault;

    b.      Uninsured or Underinsured Motorist;

    c.      Medical Expense or Medical Payments; or

    d.      Motorcycle Guest Passenger Liability;

-14-

coverage, or any similar coverage.

In order to work an estoppel in this case wherein Plaintiff relies upon representations and misrepresentations by an agent to compel coverage by an insurance company, this Court has held:

> We address first the issue of estoppel. Appellant contends that the trial court erred in granting Appellees' motion for summary judgment on the ground that Appellant is estopped to deny the Robinsons continuous liability insurance coverage. Under Tennessee law, estoppel is not favored and it is the burden of the party seeking to invoke the doctrine to prove each and every element. *Bokor v. Holder*, 722 S.W.2d 676 (Tenn.App.1986). The elements of equitable estoppel were set forth by this Court in *Consumer Credit Union v. Hite*, 801 S.W.2d 822 (Tenn.App.1990), which held:

> > The essential elements of an equitable estoppel as related to the party estopped are said to be (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) Intention, or at least expectation that such conduct shall be acted upon by the other party; (3) Knowledge, actual or constructive of the real facts. As related to the party claiming the estoppel they are (1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) Reliance upon the conduct of the party estopped; and (3) Action based thereon of such a character as to change his position prejudicially, 19 Am.Jur.Estoppel Sec. 42, pp. 642-643.

> *Hite*, 801 S.W.2d 822 at 825 (*citing Callahan v. Town of Middleton*, 41 Tenn.App. 21, 292 S.W.2d 501 (1954)).

> The burden of proof is on the insured to prove that a misrepresentation was made and that the insured reasonably relied upon the misrepresentation. *Bill Brown Constr. Co. v. Glens Falls Ins. Co.*, 818 S.W.2d 1 (Tenn.1991).

*Robinson v. Tennessee Farmers Mut. Ins.*, 847 S.W.2d 559, 563 (Tenn.Ct.App.1993).

As did the trial court, we must separate what the agent actually told Mr. Holt from what Mr. Holt assumed therefrom. The entire proof from his affidavit upon which estoppel is urged is the following excerpt:

The agent told me that Tennessee did not require drivers to have liability insurance and that a high percentage of Tennessee drivers were uninsured. The agent also told me that, in order to make my policy work, the policy limits would have to be synchronized. When I talked with the agent, I had no opportunity to review the precise language of the excess coverage in the insurance contract and I relied on what the agent told me. The agent told me that in order for my excess coverage protection to work properly with the underlying coverages, the underlying coverages would have to match. Based on this information, I raised the limits of my uninsured motorist coverage. I believed that my excess coverage protection would apply to uninsured motorist claims because the policy was changed to make the uninsured motorist limits the same as the bodily injury limits. The uninsured motorist premium and the excess protection premium were higher in Tennessee than they had been in Georgia.

3. I received and reviewed the declarations/summary of my new policy with a AAA Auto Club agent before the accident with Barbara Pyles. I made sure all of the underlying limits matched as the agent had told me they needed to. Since the underlying limits under Motor Vehicle Protection of my bodily injury, uninsured motorist - bodily injury, property damage, uninsured motorist - property damage and home protection personal liability limits were in the amounts specified under the Optional Excess Protection section of the policy declarations, I believed I had excess coverage if I was in a wreck with an uninsured or underinsured driver and my damages exceeded the uninsured motorist limits.

The agent told him that in order for his excess coverage protection to work properly that the underlying coverages would have to match. This is true under the very opening provisions of the Optional Excess Protection Endorsements but deals only with liability coverage, and the agent did not represent otherwise. He then "believed" that the excess coverage would apply to uninsured motorist coverage. Mr. Holt then states that he reviewed the declarations and summary page of his new policy with a AAA Auto Club agent before the accident. He then "made sure that all of the underlying limits matched as the agent told me they needed to." No further representations are asserted as to the agent, and Mr. Holt then makes the assumption that "since the underlying limits under the motor vehicle protection of my bodily injury, uninsured motorist-bodily injury, property damage, uninsured-property damage and home protection personal liability limits were in the amounts specified under the Optional Excess Protection section of the policy declarations, I believed I had excess coverage if I was in a wreck with an uninsured or underinsured driver and my damages exceeded the uninsured motorist limits." This is simply an unjustified assumption on the part of Mr. Holt. There is no allegation in the affidavit that the agent so represented to him and the minimum

-16-

retained limit required to effectuate the Optional Excess Protection as disclosed on page three of the summary of the new policy clearly did not include uninsured-underinsured motorist coverage.

It is very unfortunate that the serious injuries of Plaintiff cannot be compensated by a full recovery from the at-fault party State of Tennessee because of the $300,000 limitation allowed by the limited statutory modification of governmental immunity.  However, this fact provides no basis for visiting such liability on the uninsured-underinsured motorist carrier, which is after all not at fault, and must answer solely under the provisions of its insurance contract.  The Court is not at liberty to rewrite the contract.  *Black v. Aetna Ins. Co.*, 909 S.W.2d 1, 3 (Tenn.Ct.App.1995).

Since we find that there is neither ambiguity in the provisions of the contract nor estoppel, the judgment of the trial court is in all respects affirmed.  The case is remanded to the trial court for such further proceedings as may be necessary.  Costs of the appeal are assessed to Appellants.

_____

WILLIAM B. CAIN, JUDGE